No. 96-292

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

IN THE MATTER OF

F.M., Jr., S.M., J.B., and P.B.,

Youths in Need of Care

FILED

DEC 12 1996

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the First Judicial District,
In and for the County of Lewis and Clark,
The Honorable Dorothy McCarter, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

James B. Obie, Helena, Montana

For Respondent:

Joseph P. Mazurek, Attorney General, Patricia
Jordan, Assistant Attorney General, Helena, Montana;
Mike McGrath, Lewis and Clark County Attorney,
Carolyn Clemens, Deputy Lewis and Clark County
Attorney, Helena, Montana; Randi Hood, Public
Defenders Office, Helena, Montana (guardian ad
litem)

Submitted on Briefs:  October 17, 1996

Decided:  December 12, 1996

Filed:

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1995 Internal Operating Rules, the following decision shall not be cited as precedent and shall be published by its filing as a public document with the Clerk of the Supreme Court and by a report of its result to State Reporter Publishing Company and West Publishing Company.

Floyd Daryl Milsten (Milsten), the natural father of F.M., Jr., S.M. and J.B., appeals the decision of the District Court for the First Judicial District, Lewis and Clark County, terminating his parental rights as to all three children. We affirm.

The sole issue raised on appeal is:

Did the District Court err in terminating Milsten's parental rights as to F.M., Jr., S.M. and J.B.?

Factual and Procedural Background

The children involved in this case are J.B., a boy born November 4, 1989; S.M., a girl born December 19, 1991; and F.M., Jr., a boy born April 28, 1993. Milsten was the stepfather of P.B., but since he never adopted her, she is not a part of this action.

The two younger children, S.M. and F.M., Jr., were voluntarily placed in foster care by their mother in December 1993. J.B. was placed in foster care with his siblings in April 1994. Because Milsten was serving a sentence in federal prison, he was not available to care for the children from the summer of 1992 until October 1994. The children remain in the same foster home where

2

they were initially placed.

On December 22, 1993, the District Court granted the petition of the Department of Public Health and Human Services (DPHHS) requesting temporary investigative authority and subsequently declared the children to be youths in need of care. The court approved treatment plans for the children's mother on March 16, 1994, and for Milsten on May 19, 1994. The mother subsequently moved out of state and abandoned the children.

DPHHS petitioned the District Court for termination of the mother's parental rights on March 27, 1995, and for termination of Milsten's parental rights on April 12, 1995. The court granted the petition with respect to the mother on July 11, 1995, but denied the petition with respect to Milsten. The court determined that DPHHS had not met its burden of showing by clear and convincing evidence that Milsten was unable to care for his children. Milsten was given an additional six months in which to demonstrate his ability to parent his children.

DPHHS provided additional services to Milsten and a hearing on the petition for termination of his parental rights was held on January 16 and 17, 1996. After hearing testimony from the social worker with DPHHS, the parent trainers for DPHHS, a clinical psychologist, the clinical director and a therapist at Intermountain Children's Home, as well as Milsten, the District Court terminated Milsten's parental rights and awarded custody to DPHHS with the right to consent to the youth's adoption. Milsten appeals.

## Standard of Review

In cases involving the termination of parental rights, this Court will affirm a district court's findings of fact unless the findings are clearly erroneous. Matter of J.L. (Mont. 1996), 922 P.2d 459, 461, 53 St.Rep. 649, 650 (citing Matter of J.S. (1994), 269 Mont. 170, 173, 887 P.2d 719, 720). A finding is clearly erroneous if it is not supported by substantial evidence; or, if so supported, the district court misapprehended the effect of the evidence; or, if so supported and the district court did not misapprehend the effect of the evidence, a review of the record leaves this Court with the definite and firm conviction that a mistake has been committed. Matter of R.B.O. (Mont. 1996), 921 P.2d 268, 271, 53 St.Rep. 640, 642 (citing Matter of D.H. (1994), 264 Mont. 521, 524, 872 P.2d 803, 805; Interstate Production Credit v. DeSaye (1991), 250 Mont. 320, 323, 820 P.2d 1285, 1287). We review conclusions of law in cases involving the termination of parental rights to determine whether the district court's conclusions are correct. Matter of R.B.O., 921 P.2d at 271.

## Discussion

Did the District Court err in terminating Milsten's parental rights as to F.M., Jr., S.M. and J.B.?

In its Findings of Fact, Conclusions of Law and Order filed February 6, 1996, the District Court concluded that Milsten had not successfully completed the treatment plan in that he was unable to attain its goals, that it was unlikely that Milsten would be able to successfully complete the treatment plan in the foreseeable

4

future and that it was in the best interests of the children to terminate Milsten's parental rights. Milsten contends that the District Court abused its discretion by terminating his parental rights because he had completed the treatment plan.

Section 41-3-609(1)(c), MCA, provides that a district court may order the termination of the parent-child legal relationship if the child is an adjudicated youth in need of care and:

> (i) an appropriate treatment plan that has been approved by the court has not been complied with by the parents or has not been successful; and
> (ii) the conduct or condition of the parents rendering them unfit is unlikely to change within a reasonable time. . . .

Because the termination of parental rights involves fundamental liberty interests, the party seeking termination must present clear and convincing evidence that the prerequisite statutory criteria for termination have been met. Matter of J.L., 922 P.2d at 461 (citing Matter of Custody and Parental Rights of M.M. (1995), 271 Mont. 52, 56, 894 P.2d 298, 301; Matter of J.R. (1992), 253 Mont. 434, 438, 833 P.2d 1063, 1066).

There was substantial evidence presented at the termination hearing to support the District Court's finding that Milsten had not successfully completed the treatment plan and that he would not be able to successfully complete the plan in the foreseeable future. Following the court's July 11, 1995 order to provide further services to Milsten, the DPHHS social worker, Vickie Weida (Weida), set up a plan for Milsten to have extended visitation with the children. The visits took place in the park during the summer and continued in Milsten's home once he obtained housing. There

5

were several three-hour visits each week with all three children, and also one-on-one visits each week with each child, for a total of 25 visits. Milsten never had unsupervised visits with his children.

Visitations were supervised by two parent trainers, Greg and Mary Daly (the Dalys), who were brought in on a contract basis specifically to work with Milsten on his parenting skills. Weida and the Dalys testified about their concerns for Milsten's inability to attend to the most basic needs of the children to be safe, to have their diapers changed frequently, to have the dirty diapers placed out of reach of the baby while changing him and to be provided with healthy and properly cooked meals on a regular schedule.

Mary Daly testified there were 57 instances where Milsten's inattentiveness to dangers to the children created an unsafe environment. These instances included leaving stove burners on and unattended within the reach of the children; leaving loose cords accessible which the children wrapped around their necks while playing; F.M., Jr., putting his head in the toilet and Milsten doing nothing to prevent him from falling in; allowing J.B. to play on a trampoline unattended while the trampoline's springs were exposed; F.M., Jr., turning the hot water on and burning his fingers, and serving hamburgers to the children that were not properly cooked. Milsten never progressed to the point that the children's safety could be assured with less than one other adult present during the entire visit.

6

Although several of the people involved in this case testified that Milsten appears to love his children and wanted to parent them, there has been no improvement in his parenting skills and the children are deteriorating. Weida testified that she had been working with Milsten for 18 months and that she doubted his parenting skills would improve in another six months. Greg Daly testified that there had been no substantial change in Milsten and there was no potential for him to change in another six months. Mary Daly testified that she could not ethically continue to supervise visits with Milsten because they were detrimental to the well being of the children. Milsten himself testified that he thought it was best to leave the children in the foster home.

Section 41-3-609(3), MCA, provides that when considering whether to terminate the parent-child relationship "the court shall give primary consideration to the physical, mental, and emotional conditions and needs of the child." The children's best interests are paramount over Milsten's parental rights. J.B. is severely emotionally disturbed and S.M. has been developmentally delayed but has improved in foster care. The social workers, clinical psychologists and therapist all testified that the children need permanency and stability; continued attempts to have Milsten parent the children would be detrimental to the children. Milsten has had almost two years in which to improve his parenting skills, but he has been unable to do so.

Accordingly, we hold that DPHHS has presented clear and convincing evidence that the statutory criteria for termination of

Milsten's parental rights have been met and we affirm the judgment of the District Court.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

8

December 12, 1996

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

James Obie
Attorney at Law
310 Broadway
Helena, MT 59601

Joseph P. Mazurek, A.G.
Patricia Jordan, Assistant
Justice Building
Helena, MT 59620

Carolyn Clemens
Deputy County Attorney
Lewis & Clark Courthouse
228 Broadway
Helena, MT 59601

Randi Hood
Public Defenders Office
Lewis & Clark County Courthouse
Helena, MT 59601

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy