No. 01-084

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 200

IN THE MATTER OF

D.H., S.H., K.H., N.S, J.B., Jr.,

Youths in Need of Care.

APPEAL FROM: District Court of the Thirteenth Judicial District,

In and for the County of Yellowstone,

The Honorable Maurice R. Colberg, Jr., Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Kevin Gillen, Attorney at Law, Billings, Montana

For Respondent:

Hon. Mike McGrath, Attorney General; Nancy G. Schwartz,

Assistant Attorney General, Helena, Montana

Submitted on Briefs: June 29, 2001
Decided: October 4, 2001

Filed:

_____

Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1 This is an appeal by N.S. and J.B. Jr.'s mother, Marta, and J.B. Jr.'s father, James Sr., from the Findings of Fact, Conclusions of Law, and Order issued by the Thirteenth Judicial District Court, Yellowstone County, terminating their parental rights with respect to N.S. and J.B. Jr. We affirm.

¶2 We address the following issues on appeal:

¶3 1. Did the District Court err in concluding that Marta and James Sr.'s treatment plans, as set out by the Department of Public Health and Human Services, were unsuccessful?

¶4 2. Did the District Court abuse its discretion in terminating Marta and James Sr.'s parental rights when a less restrictive alternative existed?

## BACKGROUND

¶5 Marta is the natural mother of nine children, the youngest four of whom were the subject of the District Court proceedings. Marta's current husband, James Sr., is the natural father of the youngest child, J.B. Jr.

¶6 In 1994 this family came to the attention of the Wyoming Child Protective Services upon allegations that D.H. (no longer subject to these proceedings) sexually abused some of his younger siblings. Wyoming courts placed D.H. on probation for sexually abusing S. H. and N.S. In 1995 the family moved to Billings, Montana. D.H.'s probation was transferred to Billings where he and the rest of the family underwent counseling for several years. However, in 1996 the Department of Public Health and Human Services ("DPHHS") closed the case upon determining that no new incidents of incest had occurred and the family was complying with the requisite counseling and treatment needs.

¶7 As of July 1998, five children lived with Marta and James Sr.: D.H., K.H., S.H., N.S., and J.B. Jr. On July 24, 1998, DPHHS again intervened upon receiving information that K. H. had raped N.S. while the parents were away celebrating an anniversary. DPHHS immediately filed a petition for temporary investigative authority and emergency protective services and removed N.S., J.B. Jr. and R.M. (a grandchild not subject to these proceedings) from the home, placing them in protective custody. DPHHS later removed S.

H. from the home when she expressed fear of sexual abuse from D.H.

¶8 The District Court granted the temporary investigative authority for a period of ninety days following a show cause hearing and approved treatment plans for Marta and James Sr. The treatment plans sought to: establish financial stability to meet the children's needs, increase parenting abilities, provide a safe environment for the children, improve the parents' mental health status, and maintain and improve the parent-child bond.

¶9 After removing the children from the home, DPHHS discovered additional abuse. S.H. reported being raped by her older brother D.H. Further, N.S. and J.B. Jr. reported other incidents of sexual abuse by their older siblings. The children also reported instances of inappropriate punishment and severe neglect. Therefore, on November 9, 1998, DPHHS moved the District Court to extend temporary investigative authority for an additional ninety days. Marta and James Sr. did not object to the extension and the District Court granted DPHHS' motion without testimony based on the contents of the court file. The District Court approved a second treatment plan for Marta and James Sr. containing similar goals and objectives to the original plan.

¶10 On February 3, 1999, DPHHS filed a petition for temporary custody for a period of ninety days citing further disclosures of sexual abuse and intimidation by the older siblings and the parents' inability to provide a safe home and social environment for the children. Following a hearing on April 9, 1999, and no objections being made, the District Court granted temporary custody of S.H., K.H., N.S., and J.B. Jr. to DPHHS. Having reached the age of majority, the District Court dismissed D.H. from the custody proceedings. The District Court approved a third treatment plan for Marta and James Sr. similar to the previous plans.

¶11 On July 8, 1999, DPHHS filed a motion to extend temporary custody for a period of six months because of concerns about the parents' inability to provide a safe environment for the children. Following a September 1999 hearing and no objections being made, the District Court granted DPHHS' motion to extend temporary custody for a period of six months. The District Court approved a fourth treatment plan for Marta and James Sr. containing similar goals and objectives as the prior plans.

¶12 Finally, on March 16, 2000, DPHHS filed a petition for permanent legal custody, termination of parental rights, right to consent to adoption, and extension of temporary custody. DPHHS sought to: extend its temporary custody of S.H. and K.H. until they

attained the age of eighteen; terminate Marta and N.S.'s father's parental rights as to N.S.; terminate Marta and James Sr.'s parental rights as to J.B. Jr.; and obtain permanent legal custody of N.S. and J.B. Jr. with the authority to consent to adoption. In the interim, the District Court approved a fifth and final treatment plan for Marta and James Sr.

¶13 On November 15, 2000, the District Court issued its Findings of Fact and Conclusions of Law wherein the court granted long term custody of S.H. and K.H. to DPHHS and terminated their father's parental rights; terminated Marta's parental rights as to N.S. and J.B. Jr.; terminated N.S.'s father's parental rights; and terminated James Sr.'s parental rights as to J.B. Jr. This appeal addresses only those issues pertinent to the termination of Marta and James Sr.'s parental rights as they relate to N.S. and J.B. Jr.

## STANDARD OF REVIEW

¶14 In reviewing a decision to terminate parental rights, we determine whether the district court's findings of fact supporting termination are clearly erroneous and whether the district court's conclusions of law are correct. *In re C.B.*, 2001 MT 42, ¶ 6, 304 Mont. 252, ¶ 6, 20 P.3d 117, ¶ 6. Findings of fact are clearly erroneous if they are not supported by substantial evidence; or, if so supported, the district court misapprehended the effect of the evidence; or, if so supported and the district court did not misapprehend the effect of the evidence, this Court is left with the definite and firm conviction that a mistake has been committed. *In re S.M.*, 1999 MT 36, ¶ 15, 293 Mont. 294, ¶ 15, 975 P.2d 334, ¶ 15. In regard to the statutorily required findings of fact supporting termination, we have stated that a natural parent's right to care and custody of a child is a fundamental liberty interest which must be protected by fundamentally fair procedures and, therefore, the burden is on the party seeking termination to demonstrate by clear and convincing evidence that every requirement set forth in the statute has been satisfied. *In re C.B.*, ¶ 6.

¶15 Finally, a district court's decision to terminate parental rights is discretionary and we review that decision to determine whether the court abused its discretion. *In re J.W.*, 2001 MT 86, ¶ 7, 305 Mont. 149, ¶ 7, 23 P.3d 916, ¶ 7. The test for abuse of discretion is whether the trial court acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice. *In re J.M.J.*, 1999 MT 277, ¶ 16, 296 Mont. 510, ¶ 16, 989 P.2d 840, ¶ 16.

## ISSUE ONE

¶16 Did the District Court err in concluding that Marta and James Sr.'s treatment plans, as set out by DPHHS, were unsuccessful?

¶17 Pursuant to § 41-3-609(1)(f), MCA, a court may terminate parental rights upon a finding that the child is an adjudicated youth in need of care and both of the following exist:

> (i) an appropriate treatment plan that has been approved by the court has not been complied with by the parents or has not been successful; and

> (ii) the conduct or condition of the parents rendering them unfit is unlikely to change within a reasonable time.

When considering the criteria for termination, primary consideration must be given to the best interests of the child as demonstrated by the child's physical, mental, and emotional conditions and needs. *In re S.M.*, 2001 MT 11, ¶ 31, 304 Mont. 102, ¶ 31, 19 P.3d 213, ¶ 31.

¶18 Marta and James Sr. have not challenged the District Court's finding that N.S. and J.B. Jr. are youths in need of care. They do challenge the appropriateness of the treatment plans, the District Court's finding that the treatment plans were unsuccessful, and the District Court's finding that their conduct is unlikely to change within a reasonable time.

## A. Appropriateness of the Treatment Plans

¶19 From what we can deduce, Marta and James Sr. contend the treatment plans were inappropriate and unreasonable in light of the long term care required to help these sexually abused children. Further, Marta and James Sr. assert they were trapped into a treatment plan which was destined to fail due to the abbreviated time constraints of the plans. To support this proposition, Marta and James Sr. cite the concurring opinion in *Matter of J.S. & P.S.* (1994), 269 Mont 170, 178-79, 887 P.2d 719, 724 (Gray, J., specially concurring).

¶20 This Court has not specifically defined what constitutes an "appropriate" treatment plan as a matter of law and, indeed, no such bright line definition is possible given the unique circumstances existing in each case. *Matter of Custody and Parental Rights of M. M.* (1995), 271 Mont. 52, 56, 894 P.2d 298, 301. In evaluating the appropriateness of a

treatment plan, we have considered such factors as: (1) whether the parent was represented by counsel and stipulated to the treatment plan; and (2) whether the treatment plan was directed at problems facing the parent and the child. *Matter of M.M.*, 271 Mont. at 57, 894 P.2d at 301.

¶21 In the present case, DPHHS documented several instances of incestuous sexual abuse perpetrated against several children in the family by their siblings. There is no evidence indicating Marta or James Sr. ever sexually abused any of the children. Therefore, DPHHS primarily sought to educate the parents on how to provide a safe physical and emotional environment for the children. To that end, DPHHS developed several treatment plans to address the parents' deficiencies.

¶22 From August 24, 1998, to June 6, 2000, DPHHS designed five separate treatment plans for Marta and James Sr. The treatment plans endeavored to establish stable financial conditions, heightened parenting abilities, a safe environment for the children, improved mental health in regards to Marta and James Sr., and an improved parent-child bond. To perpetuate the treatment plans, the family underwent extensive individual and family counseling and maintained continued contact with social workers. While Marta and James Sr. signed only two of the treatment plans, they attempted to comply with all of them. The District Court approved all five plans.

¶23 Marta and James Sr. contend that their treatment plans were destined to fail due to unrealistic time constraints. They cite the concurring opinion in *Matter of J.S. & P.S.* in support of this proposition. In *Matter of J.S. & P.S.*, two minor children were removed from their home after their father sexually assaulted one of them. The Department of Family Services established treatment plans for both the mother and father. After their mother failed to comply with her two month treatment plan, the District Court terminated her parental rights and this Court affirmed. *Matter of J.S. & P.S.*, 269 Mont. at 178, 887 P.2d at 724. In a concurring opinion, Justice Gray stated:

> I am troubled by the notion that a two-month treatment plan which involves counseling is an "appropriate" treatment plan under § 41-3-609, MCA. Preparing such an abbreviated plan involving counseling strikes me as trapping the parent into an inability to successfully complete the program within the time allotted. Successful results from counseling will not be immediate, and such short-term counseling mandates should not be utilized in treatment plans merely to provide an easy and expeditious opportunity for the government to establish that the parent has

not been successful in completing the treatment plan.

*Matter of J.S. and P.S., 269 Mont. at 179, 887 P.2d at 724 (Gray, J., specially concurring). In essence, Justice Gray expressed concern about terminating the mother's parental rights in light of the brevity of her two month treatment plan.*

¶24 In the present case, DPHHS drafted five treatment plans for Marta and James Sr. over the course of two years. Marta and James Sr. had more than sufficient time to comply with any one of the treatment plans. At all times relevant to the custodial proceedings, Marta and James Sr. were represented by counsel. The record does not reflect any objections to the plans prior to this appeal. Clearly, these treatment plans were directed at protecting the children from further sexual abuse within the home. We conclude that the treatment plans were "appropriate" for purposes of § 41-3-609, MCA.

## B. Success of the Treatment Plans

¶25 The District Court determined, pursuant to § 41-3-609(1)(f)(i), MCA, that Marta and James Sr. failed to successfully complete their treatment plans. Marta and James Sr. contend they satisfied all of the "attainable" goals of the treatment plans. Therefore, they argue the District Court erred in finding the treatment plans unsuccessful as that finding was not supported by clear and convincing evidence. We disagree.

¶26 DPHHS arranged for the family to undergo treatment at South Central Treatment Associates ("SCTA"), an outpatient sexual abuse treatment program. DPHHS developed the first treatment plan in September 1998. Since January 1999, five professionals from SCTA were involved with treating this family. SCTA provided the family with several treatment services including sexual offender treatment for the identified sex abusers in the family, victim support and individual counseling for S.H., N.S., and J.B. Jr., individual counseling and group therapy for Marta, and family therapy for the whole family.

¶27 One of the professionals, clinical social worker Michael D. Sullivan, testified that on at least three occasions between April and August 1999, SCTA informed Marta and James Sr. of treatment expectations and consequences for noncompliance. Marta and James Sr. were repeatedly warned that a failure to comply with their treatment plans could result in termination of their parental rights. With the children's safety as the primary concern, SCTA worked with Marta and James Sr. to improve particular problem areas. Areas of focus included establishing boundaries, acknowledging denial, and fostering honest

communication.

¶28 Sullivan testified that during his work with Marta he did not feel she effectively participated in treatment. During Marta's treatment, Sullivan noted she appeared dishonest, projected blame on DPHHS, failed to assume personal responsibility for behavior, and attempted to manipulate professionals. Similarly, Sullivan testified that James Sr. was very manipulative and dishonest, projected a great deal of blame, failed to assume responsibility, and felt victimized by the circumstances. Further testimony revealed sporadic attendance and ineffective use of time in treatment. The evidence also indicated Marta and James Sr. failed to provide support and encouragement to the identified sexual offenders' participation in treatment.

¶29 In Sullivan's opinion, neither Marta nor James Sr.'s therapy proved successful as he saw no improvement in their parenting skills or ability to protect the children. Sullivan testified that from November 1998 until his last meeting with the family, he saw no improvement which would cause him to pause in recommending termination of parental rights. Cathy Cardneaux, a licensed clinical professional counselor, and social worker Nita Weyler corroborated Sullivan's testimony regarding Marta and James Sr.'s lack of improvement.

¶30 While the record indicates Marta and James Sr. did comply with some obligations of the treatment plans, partial compliance with a treatment plan is an insufficient basis on which to premise error in the District Court's finding that Marta and James Sr. failed to comply with their treatment plans. *See In re A.N.*, 2000 MT 35, ¶ 45, 298 Mont. 237, ¶ 45, 995 P.2d 427, ¶ 45. The record before us contains substantial evidence supporting the District Court's finding that Marta and James Sr. failed to successfully complete the obligations of their treatment plans. Therefore, we conclude that the District Court's finding that Marta and James Sr. failed to successfully complete their treatment plans is not clearly erroneous.

### C. Conduct Unlikely to Change Within a Reasonable Time

¶31 In determining whether the conduct or condition rendering a parent unfit is unlikely to change within a reasonable time, a trial court must find that continuation of the parent-child relationship will likely result in continued abuse or neglect or that the conduct or the condition of the parents renders the parents unfit, unable, or unwilling to give the child adequate parental care. § 41-3-609(2), MCA. Here, the District Court found that Marta

and James Sr. were unable to improve their conduct or condition that renders them unfit, unable or unwilling to give the children adequate parental care. The District Court concluded that this conduct or condition rendering them unfit appears unlikely to change within a reasonable time. Marta and James Sr. argue that these findings are clearly erroneous. We disagree.

¶32 Our prior case law clearly establishes that the best interests of the child are paramount in a termination of parental rights action and take precedence over parental rights. *In re J. W.*, ¶ 8. In weighing the competing interests, the district court must give primary consideration to the physical, mental, and emotional conditions and needs of the child. § 41-3-609(3), MCA. The trial court should assess a parent's past and present conduct in determining whether that parent's conduct is unlikely to change within a reasonable time. *In re M.A.E.*, 1999 MT 341, ¶ 37, 297 Mont. 434, ¶ 37, 991 P.2d 972, ¶ 37.

¶33 We review the record to determine whether substantial evidence supports the District Court's finding that Marta and James Sr.'s unfit conduct was unlikely to change within a reasonable time. Sullivan testified that neither Marta nor James Sr. effectively participated in treatment. He based this opinion on the fact that Marta and James Sr. required treatment on the same issues at the conclusion of treatment as they did at the treatment's inception. Essentially, in Sullivan's opinion, Marta and James Sr. did not progress in their treatment. Further, Sullivan stated he did not believe Marta or James Sr. would be capable of providing a safe environment for their children in the foreseeable future. He questioned their ability to protect young children in their home from sexual abuse.

¶34 Cardneaux agreed with Sullivan's assessment of Marta and James Sr.'s progress. Cardneaux also testified that Marta never appreciated the impact of sexual abuse on the children. In Cardneaux's opinion, Marta had not changed enough to sufficiently protect her children.

¶35 Marlene Johnson, a licensed clinical professional counselor, began working with J.B. Jr. in December of 1999. Johnson diagnosed J.B. Jr. with reactive attachment disorder, citing J.B. Jr.'s failure to empathize with others, his isolating nature, and narcissistic disposition. Johnson testified that J.B. Jr. needs to develop an attachment to a strong, healthy adult who provides structure, nurturing, and consistency in his life. Johnson felt that Marta and James Sr. showed a lack of motivation and involvement in J.B. Jr.'s treatment. She stated that as J.B. Jr. progresses into adolescence without a strong family to identify with, his prognosis worsens. Johnson cautioned that, if left alone, J.B. Jr. could

develop into what is known as a child without a conscience. Johnson recommended termination of parental rights as to J.B. Jr. as soon as possible.

¶36 Finally, N.S. testified at the termination of parental rights hearing. J.B. Jr. did not testify. Damon Gannett, the court appointed Guardian Ad Litem, asked N.S. what she wanted the District Court to do with respect to her situation. N.S. responded that she wanted the District Court to terminate her parents' parental rights so she could find a family who will love and care for her for who she is.

¶37 As stated above, the District Court found that Marta and James Sr.'s conduct or condition that renders them unfit, unable, or unwilling to give the children adequate parental care was unlikely to change within a reasonable time. The foregoing testimony, the fact that the children have been in foster care since July 1998, the number of treatment plans provided to Marta and James Sr., and the length of time available to Marta and James Sr. to comply with the treatment plans provide substantial evidence to support the District Court's finding. We conclude that the District Court's finding is not clearly erroneous.

¶38 For the aforementioned reasons we hold that the District Court's findings of fact regarding the termination of Marta and James Sr.'s parental rights to N.S. and J.B. Jr. were not clearly erroneous. Therefore, the District Court did not abuse its discretion in terminating Marta and James Sr.'s parental rights.

## ISSUE TWO

¶39 Did the District Court abuse its discretion in terminating Marta and James Sr.'s parental rights when a less restrictive alternative existed?

¶40 Marta and James Sr. contend that, even if we conclude that the District Court's findings regarding § 41-3-609, MCA, are not clearly erroneous, the District Court abused its discretion because a less restrictive alternative to termination of parental rights existed. Marta and James Sr. rely on *In re E.W.*, 1998 MT 135, ¶ 12, 289 Mont. 190, ¶ 12, 959 P.2d 951, ¶ 12, for the principle that parental rights are a fundamental liberty interest and, therefore, the District Court can only restrict these rights to the extent necessary to protect the children. *See In re J.M.J.*, ¶ 29. They argue the District Court could have extended DPHHS' temporary custody, thus preserving the children's best interests and Marta and James Sr.'s fundamental parental rights. DPHHS insists we should not address this issue

on appeal as Marta and James Sr. did not raise it before the District Court. Marta and James Sr. did not respond to DPHHS' contention.

¶41 As a general rule, we do not consider an issue presented for the first time on appeal because it is fundamentally unfair to fault the trial court for failing to rule correctly on an issue it was never given the opportunity to consider. *In re J.M.J.*, ¶ 31. Here, the District Court did hear evidence regarding the children's best interests. However, Marta and James Sr. did not present the argument to the District Court that their parental rights could only be restricted to the extent necessary to protect their children. Therefore, we decline to address it further.

¶42 Affirmed.

/S/ JIM REGNIER

We Concur:

/S/ KARLA M. GRAY

/S/ W. WILLIAM LEAPHART

/S/ TERRY N. TRIEWEILER

/S/ JIM RICE