DA 21-0135

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2021 MT 314N

IN THE MATTER OF:

A.M.M.R. and M.L.R.M.R.,

     Youths in Need of Care.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DN 19-107
Honorable Donald L. Harris, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

          Daniel V. Biddulph, Peppertree Law, PLLC, Missoula, Montana
          (for Father)

          Shannon Hathaway, Driscoll Hathaway Law Group, Missoula, Montana
          (for Mother)

       For Appellee:

          Austin Knudsen, Montana Attorney General, Tammy K Plubell, Assistant
          Attorney General, Helena, Montana

          Scott D. Twito, Yellowstone County Attorney, Amanda Tiernan, Scott
          Pederson, Deputy County Attorneys, Billings, Montana

                     Submitted on Briefs:  November 3, 2021

                             Decided:  December 14, 2021

Filed:

                   _____
                             Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 K.L.M. (Mother) and T.H.R. (Father) each appeal the Thirteenth Judicial District Court's findings of fact, conclusions of law, and orders terminating their parental rights regarding their daughter, A.M.M.R., and their son, M.L.R.M.R. (collectively "the Children"). Mother argues the District Court erred in its determination that the conduct or condition rendering her unfit to be a parent was unlikely to change within a reasonable time. Father argues the District Court abused its discretion in terminating his parental rights. We affirm the District Court's termination of both parent's parental rights.[1] We address the facts and procedural history relevant to each parent in turn.

*Facts and Procedural History Relative to Mother*

¶3 A.M.M.R. was born to Mother and Father in December 2012. M.L.R.M.R. was born to Mother and Father in August 2017. In March 2019 the Children were removed from Mother's house by the Montana Department of Public Health and Human Services, Child and Family Services Division (Department), after a report of physical neglect due to

---

[1] This Court consolidated the several appeals taken by each parent relative to the Children into this single cause number.

Mother's ongoing methamphetamine use and inability to provide a safe living environment for the Children.[2] During the Department's investigation into the neglect allegations, Mother was incarcerated due to drug-related probation violations (Father at this time was already incarcerated, as discussed below). Both children were placed in kinship foster care—A.M.M.R. eventually with her maternal aunt (Aunt), and M.L.R.M.R. eventually with his paternal uncle (Uncle).

¶4 The Children were adjudicated Youth in Need of Care (YINC) on June 6, 2019. On July 2 the Department, pursuant to § 41-3-423(2), MCA, petitioned for a determination that preservation or reunification services need not be provided. On August 7 the Department withdrew the petition and the District Court approved a treatment plan ("Phase I Treatment Plan") for Mother. By that time, Mother had been transferred to Passages inpatient drug treatment center for drug-treatment services; she was released from Passages on November 18. At this point, Mother was only allowed supervised visitation with her children. Despite this, on November 23, 2019, Mother took A.M.M.R. and S.B., along with her niece, on an unsupervised trip to a water park. During the drive to the water park, Mother was apparently rear-ended while slowing her vehicle near an unrelated automobile accident. Despite this initial impact's slow speed, Mother's vehicle then travelled an additional 500 feet, both on and off the road, before crashing—head-on and now at high-speed—into another vehicle. Neither A.M.M.R. nor S.B. were seated in child safety seats, and both

---

[2] S.B., Mother's son by a different father, was also removed from the household at this time.

were severely injured in the collision. Mother claims she blacked-out after being rear-ended and does not remember anything further about the accident.[3]

¶5 The high-speed collision resulted in S.B. and A.M.M.R. being transported via aircraft to Utah for emergency care. S.B. would pass away from his injuries soon after arrival in Utah, while A.M.M.R. required extensive life-saving operations and spent 111 days in the hospital. While these operations saved the life of the then seven-year-old A.M.M.R., the accident left her paralyzed from the waist down, and she requires extensive daily care for the foreseeable future, if not the rest of her life. Mother made just two five-day trips to Utah to attend to A.M.M.R., one immediately after the accident and one several weeks later; because of this, she was unable to learn how to properly care for A.M.M.R. After her hospital stay, the Department placed A.M.M.R. in her maternal grandmother's (Grandmother) care; both Grandmother and Aunt have learned how to properly care for A.M.M.R.

¶6 The Department filed another petition for no reunification services; at the hearing, the District Court heard a substantial amount of testimony regarding the November 23 accident, the extent of A.M.M.R.'s injuries, and the amount of specialized care she will likely need for the remainder of her life. It also heard testimony regarding Mother's inconsistent attendance at therapy sessions with her addiction counselor; Mother's refusal

---

[3] This discussion of the accident is not a commentary on Mother's criminal liability, or lack thereof, and any potential criminal liability on Mother's part has not been considered as part of our decision here. However, the accident is relevant in our consideration of whether Mother is likely to become a fit parent within a reasonable amount of time, and to whether it is in the Children's best interests for Mother's parental rights to be terminated.

4

to engage in family therapy sessions with M.L.R.M.R.'s counselor, with Mother asserting it was a "conflict of interest" to meet with her; Mother's inconsistent participation in drug testing; and Mother's failure to update basic contact information with her caseworker. While the District Court denied the Department's petition for no reunification services, it ordered Mother to engage in drug testing, giving an explicit warning to Mother that: "If you do not consistently engage in drug testing . . . if the State files a petition to terminate, I will not hesitate to terminate your rights if you've not been drug testing."

¶7 On June 25, 2020, the Department filed to terminate Mother's parental rights relative to the Children.[4] The District Court held a two-day long termination hearing on February 3 and 10, 2021. Numerous mental health and addiction treatment providers, Department caseworkers, and the Court Appointed Special Advocate testified at the hearing. Their testimony established that Mother continued to be non-compliant with consistently performing drug tests and at various times tested positive for methamphetamine, amphetamines, and THC. A recurrent theme in the providers' testimony was that Mother would constantly miss appointments and consistently refuse to sign medical releases allowing her various providers to communicate with each other. Several professionals testified that Mother would only work on treatment plan tasks shortly before court hearings, and then quickly cease engaging in these tasks afterwards. Mother testified at the hearing; she indicated that she had restarted randomized drug tests through

---

[4] The same day, the Department filed a proposed Phase II Treatment Plan. Mother never signed this plan. At the termination hearing, all parties and the Court focused on Mother's efforts under the Phase I plan and the proposed Phase II plan was not considered.

Ideal Options but did not sign releases with them in time to have any of the testing results available for the hearing.

¶8 Regarding the Children, testimony established that both A.M.M.R. and M.L.R.M.R. are doing very well with their foster placements. A.M.M.R. is receiving the daily care she needs, being taken to all hospital appointments, and is enrolled in a school that is able to meet her needs. M.L.R.M.R. regularly visits with his sister, has made significant progress in addressing some emotional and behavioral issues present when removed from Mother's care, and is displaying the developmental cues expected for a child his age. Both of the Children's foster placements are willing to be permanent placements and adopt the Children. The Children's success at their foster placements is undisputed by either Mother or Father on appeal.

¶9 The District Court entered a pair of findings of fact, conclusions of law, and orders in the matter. The District Court found that clear and convincing evidence established that Mother needs long-term substance abuse and addiction counseling to manage her methamphetamine addiction, she is unlikely to engage successfully in the long-term care she requires, and that her inability to maintain sobriety and provide a safe environment for the Children is unlikely to change within a reasonable time. The District Court also found that Mother is not able to provide A.M.M.R. the specialized healthcare she requires, and both Children need consistency and safety in order to address their own individual special needs. Based on these findings, which the District Court concluded were based on clear and convincing evidence, it terminated Mother's parental rights relative to both Children.

*Facts and Procedural History Relative to Father*

¶10  At the time A.M.M.R. and M.L.R.M.R. were removed from Mother's house, Father was incarcerated on probation violations, including testing positive for methamphetamine. On June 6, 2019, the Children were adjudicated as YINC. On July 7, 2020, the District Court approved a treatment plan for Father. The Department petitioned to terminate Father's parental rights on January 25, 2021, and a hearing on the petition was held in March 2021. At the hearing, one of Father's previous probation officers testified as to the nature of Father's incarceration. Although the probation officer was not currently assigned to Father's case and had not supervised Father since 2011, he reviewed Father's casefile and testified that Father was scheduled to be released from incarceration in 2024, that Father would have 23 months of supervision after any release, and that Father had previously done poorly on periods of supervision. Father testified, stating he hoped to be paroled as early as June 2021, and that upon being released he planned to attend inpatient drug treatment and then reside at a sober-living house until he could restart work and obtain a permanent residence. Father did not know if the Children would be able to reside with him at those facilities. Additional testimony, substantially the same as testimony discussed above during Mother's termination hearing, established that the Children were doing very well with their foster placements.

¶11  On March 31, 2021, the District Court issued orders terminating Father's parental rights. The District Court found that Father has been incarcerated since January 16, 2018, and has three-and-a-half years left on his sentence. The District Court found that although Father hopes to be paroled in June 2021, his plan to attend eight months of inpatient drug

treatment and then stay at a sober-living house until he can find housing and employment would not leave him in a position to parent for another 12 to 18 months, even if granted parole. The District Court additionally found that both Children have been progressing and thriving with their current placements, both of the Children's placements wish to adopt the Children, and that it is in both A.M.M.R.'s and M.L.R.M.R.'s best interests to obtain permanency through adoption rather than wait an indefinite amount of time to see if Father can become an appropriate parent.

¶12 Based on these findings, the District Court ruled that pursuant to § 41-3-609(4)(c), MCA, Father would be incarcerated for over one year and therefore no treatment plan was required to terminate his parental rights. It concluded that Father has never established a parenting relationship with A.M.M.R. and does not know how to provide her the specialized care she requires, and that Father has been incarcerated for all but four months of M.L.R.M.R.'s life and has never parented him. The District Court finally concluded that Father will not be able to appropriately parent the children within a reasonable time, and therefore terminated his parental rights pursuant to § 41-3-609(4)(c), MCA.

¶13 Both Mother and Father appeal the District Court's termination of their parental rights relative to both of the Children.

¶14 "This Court reviews a district court's termination of parental rights for an abuse of discretion." *In re A.B.*, 2020 MT 64, ¶ 23, 399 Mont. 219, 460 P.3d 405 (citation omitted). "[A district] court abuses its discretion if it terminates parental rights based on clearly erroneous findings of fact, erroneous conclusions of law, or otherwise acts arbitrarily, without employment of conscientious judgment, or exceeds the bounds of reason resulting

8

in substantial injustice." *In re D.E.*, 2018 MT 196, ¶ 21, 392 Mont. 297, 423 P.3d 586 (citations, internal quotation omitted). "Findings of fact are clearly erroneous if not supported by substantial evidence, the [district] court misapprehended the effect of the evidence, or this Court has a definite and firm conviction that the lower court was mistaken." *In re D.E.*, ¶ 21 (citing *In re D.H.*, 2001 MT 200, ¶ 14, 306 Mont. 278, 33 P.3d 616). A district court's conclusions of law are reviewed de novo for correctness. *In re D.E.*, ¶ 21 (citation omitted). The State must show by clear and convincing evidence that the statutory criteria for termination have been satisfied. *In re R.J.F.*, 2019 MT 113, ¶ 20, 395 Mont. 454, 443 P.3d 387. Clear and convincing evidence is the requirement that a preponderance of the evidence be definite, clear, and convincing. *In re R.J.F.*, ¶ 20 (citing *In re K.L.*, 2014 MT 28, ¶ 14, 373 Mont. 421, 318 P.3d 691).

*Discussion Relative to Mother*

¶15 The District Court terminated Mother's parental rights pursuant to § 41-3-609, MCA. The relevant portions of that statute provide that a district court:

> may order a termination of the parent-child legal relationship upon a finding established by clear and convincing evidence . . . [that] the child is an adjudicated youth in need of care and both of the following exist: (i) an appropriate treatment plan that has been approved by the court has not been complied with by the parents or has not been successful; and (ii) the conduct or condition of the parents rendering them unfit is unlikely to change within a reasonable time.

Section 41-3-609(1)(f)(i)–(ii), MCA. "In determining whether the conduct or condition of the parents is unlikely to change within a reasonable time," courts are required to enter a finding that "continuation of the parent-child legal relationship will likely result in continued abuse or neglect or that the conduct or the condition of the parents renders the

9

parents unfit, unable, or unwilling to give the child adequate parental care." Section 41-3-609(2), MCA. In making this determination, courts shall consider the:

> emotional illness, mental illness, or mental deficiency of the parent of a duration or nature as to render the parent unlikely to care for the ongoing physical, mental, and emotional needs of the child within a reasonable time; [] a history of violent behavior by the parent; [] excessive use of intoxicating liquor or of a narcotic or dangerous drug that affects the parent's ability to care and provide for the child; and [] present judicially ordered long-term confinement of the parent.

Section 41-3-609(2)(a)–(d), MCA. Above all of these considerations, however, courts have the obligation to "give primary consideration to the physical, mental, and emotional conditions and needs of the child." Section 41-3-609(3), MCA.

¶16 The District Court found that Mother's Phase I Treatment Plan was tailored to address the issues leading to the Children's initial removal, but that Mother failed to successfully complete it. Based on testimony and evidence presented at the termination hearing, the District Court found that Mother repeatedly failed to show up for drug testing and tested positive for methamphetamine on several occasions when she completed testing. Additionally, Mother failed to complete drug and individual counseling, failed to maintain regular contact with the Department caseworkers managing her case, had only sporadic contact with the Children, and failed to maintain consistent parenting time as required by the treatment plan. The District Court found that experts testifying at the termination hearing established by clear and convincing evidence:

> (1) that [Mother] needs long-term substance use disorder treatment and mental health counseling to successfully manage her methamphetamine addiction and attain long-term sobriety; (2) that [Mother] is unlikely to engage successfully in the long-term treatment she requires; (3) that [Mother] cannot safely parent [the Children] at the present time; and (4) that

10

[Mother's] inability to maintain sobriety and provide a safe environment for [the Children] is unlikely to change within a reasonable amount of time.

¶17 Regarding A.M.M.R. specifically, the District Court found that her medical condition required specialized daily care which Grandmother is trained in and has been providing, but which Mother is not trained in. Regarding M.L.R.M.R., the District Court found that he is doing well in his placement with Uncle, the placement allows him to spend a significant amount of time with his sister, and it is in his best interest to remain in that placement. The District Court finally found that both of the Children's placements are willing to become the Children's permanent guardians through adoption. Based on these findings, the District Court concluded it is in the Children's best interests for Mother's parental rights to be terminated. The District Court also concluded that Mother failed to overcome the presumption found in § 41-3-604(1), MCA, that, having been in foster care for over 22 months, the Children's best interests are presumed served by terminating Mother's parental rights.

¶18 Mother argues that the District Court erred because there was substantial evidence presented establishing Mother's progress towards completing her treatment plan goals, and that some of Mother's long-term medical providers testified that she was likely to change and "in a good place to begin making some strides in improving her condition." The State responds that the record clearly establishes that Mother lacks insight into her own situation, making it difficult for her to make meaningful change, that Mother cannot meet the Children's special needs, and that the Children's need for safety, stability, and security outweigh Mother's desire for more time.

¶19     We conclude the District Court did not err in terminating Mother's parental rights. Mother does not dispute the District Court's findings that the Children are YINC, and that she did not complete her treatment plan. Termination of parental rights is therefore permissible if the District Court finds by clear and convincing evidence that "the conduct or condition of the parents rendering them unfit is unlikely to change within a reasonable time." Section 41-3-609(1)(f)(ii), MCA. Here, the conduct or condition rendering Mother unfit is her addiction to intoxicating substances, particularly methamphetamine. Numerous providers testified that Mother needs long-term substance abuse and mental health treatment in order to manage or overcome this addiction. The District Court's findings were supported by substantial evidence, which established that Mother does not consistently engage with her mental health providers and refuses to sign the releases necessary for her various providers to communicate with each other. The necessity for Mother to engage in consistent, regular, drug-testing as a part of overcoming her addiction was clearly established at both the no-reunification hearing and at the termination hearing. Indeed, at the no-reunification hearing, the District Court specifically warned that Mother risked having her parental rights terminated should she not consistently engage in drug-testing. The evidence in the record clearly and convincingly shows that Mother failed to consistently drug test and, when she did drug test, tested positive on several occasions. And while Mother argues that she began regularly testing with Ideal Options shortly before the termination hearing, she could not produce any test results—positive or negative— from this organization. This evidence permissibly informed the District Court's finding that the conduct or condition rendering Mother unfit is unlikely to change within a

12

reasonable time. *See In re S.C.L.*, 2019 MT 61, ¶ 9, 395 Mont. 127, 437 P.3d 122 ("[T]o determine whether the conduct or condition rendering a parent unfit is likely to change within a reasonable time, the District Court *is required to assess* the past and present conduct of the parent. We do not have a crystal ball to look into to make this determination, so it *must, to some extent, be based on a person's past conduct*.") (citations omitted).

¶20 Finally Mother argues that this Court should consider "whether Mother had a *meaningful opportunity* to address the conduct resulting in the Department[']s involvement" considering the "unique traumatic events" of S.B.'s death and A.M.M.R.'s injuries. While the events surrounding this case are undeniably tragic, and we do not doubt Mother's grief at the loss of S.B. and A.M.M.R.'s injuries, our primary consideration remains the Children's "physical, mental, and emotional conditions and needs." Section 41-3-609(3), MCA. A.M.M.R. requires extensive daily care for the foreseeable future, care that Grandmother is giving her but that Mother has not been trained in nor taken any meaningful steps to be trained in. M.L.R.M.R. displayed concerning emotional and behavioral issues while living with Mother, behavior that has since ameliorated while in Uncle's care. Both Children have been in foster placement for over two years. They require a stable, nurturing environment that can provide for their developmental needs. Both Children, by all accounts, are currently being provided that environment with their current placements, and Grandmother and Uncle have indicated they intend to adopt the respective Children. We have previously recognized that "[c]hildren do not remain in a holding pattern as a parent grapples with disabling conditions; time moves on and they continue to grow and require parental care." *In re M.T.*, 2020 MT 262, ¶ 33, 401 Mont.

13

518, 474 P.3d 820.  Such is the case here as well.  The District Court did not abuse its discretion in terminating Mother's parental rights pursuant to §§ 41-3-604 and -609, MCA, and its orders are affirmed.

*Discussion Relative to Father*

¶21     The District Court terminated Father's parental rights pursuant to § 41-3-609, MCA. While normally § 41-3-609(1)(f)(i), MCA, requires a parent's noncompliance with a court-approved treatment plan before the termination of parental rights, § 41-3-609(4)(c), MCA, removes that requirement when a parent "is or will be" incarcerated for more than one year and "reunification of the child with the parent is not in the best interests of the child because of the child's circumstances, including placement options, age, and developmental, cognitive, and psychological needs."  Here, the District Court found that Father failed to complete his treatment plan, but that failure was based on his being incarcerated and therefore unable to comply with the plan's terms.  As the District Court correctly noted, this Court has previously ruled that "a court cannot find a treatment plan unsuccessful based solely on a parent's incarceration where . . . the Department was aware of the parent's incarceration and proposed a treatment plan with the full knowledge that the parent was incarcerated."  *In re A.L.P.*, 2020 MT 87, ¶ 23, 399 Mont. 504, 461 P.3d 136.  Despite this, however, the District Court found that a treatment plan was not a necessary prerequisite for the termination of parental rights because Father "is or will be incarcerated" for more than one year pursuant to § 41-3-609(4)(c), MCA, and that reunification is not in the Children's best interests.  Father argues on appeal that the District

14

Court erred when it determined that Father would be incarcerated for more than one year, and that termination is in the Children's best interests.

¶22 We conclude the District Court did not err in finding that Father would be incarcerated for more than one year. Father argues that the witness that testified that Father would be incarcerated for more than one year did not have sufficient knowledge of his case to support that claim, and therefore the District Court's determination was not based on substantial, clear evidence. Father argues he is intimately familiar with his case and testified at the termination hearing that he expected to go before the Montana Board of Pardons and Parole (the "Board") and be paroled about three months after the termination hearing. He points this Court to the Board's list of dispositions from April 2021 showing that his parole hearing was continued 120 days.[5] As indicated on the Board's website, Father's hearing was subsequently held and the Board denied him parole for at least one-years' time. The District Court found that "it is speculative [] to conclude [Father] will be paroled in [] 2021"—this finding has since been proven factually true. We cannot say, therefore, that the District Court abused its discretion in finding that a treatment plan was not required under § 41-3-609(4)(c), MCA, because Father "is or will be incarcerated" for more than one year.

---

[5] This list, presented as a .pdf on the Board's website's page regarding the disposition of parole hearings, was not admitted as evidence at trial and is presented for the first time on appeal. Because the State does not object to its relevance or accuracy, we take judicial notice of it on appeal. Because Father, by directing us to that list, has vouched for the accuracy of the Board's lists regarding dispositions of parole hearings, we also take judicial notice of the Board's subsequent August 2021 parole hearing regarding Father's case.

15

¶23 Father also argues that the District Court erred in determining that terminating Father's parental rights is in the Children's best interests. Father argues that while pursuant to § 41-3-604(1), MCA, there is a presumption that termination is in a child's best interest when the child has been in the State's custody for 15 of the last 22 months, "the presumption in § 41-3-604(1), MCA, neither eliminates the substantive requirements of § 41-3-609, MCA, nor diminishes the clear and convincing burden of proof on the party seeking termination of parental rights." *In re D.B.*, 2007 MT 246, ¶ 23, 339 Mont. 240, 168 P.3d 691 (citation and internal quotation marks omitted). Pointing to his efforts seeking out a chemical dependency evaluation, creating a sober-living plan to implement following his release, and his continued communication with his children, Father argues there is record-based evidence that he could adequately parent the Children.

¶24 The District Court also concluded, however, that the Department showed by clear and convincing evidence that: Father will not "discharge the incarceration portion of his sentence for another 3-1/2 years"; has never established a sustained parenting relationship with the Children; does not know how to provide A.M.M.R. with the specialized care she needs; that both Children need safe, nurturing, and permanent households to continue their own individual progress; and that Father "will not be able to appropriately parent [] within a reasonable amount of time." Despite there being some record evidence that Father is taking steps to address his addiction and seek further treatment when he is eventually released, Father has not demonstrated that the District Court's conclusions supporting termination are not based on substantial, clear and convincing evidence, or that the District Court somehow misapprehended the effect of the evidence. *In re R.J.F.*, ¶ 20. Further, the

District Court's considerations fulfill the statutory requirements for termination found in § 41-3-609, MCA.

¶25 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. This appeal presents no constitutional issues, no issues of first impression, and does not establish new precedent or modify existing precedent. The District Court did not abuse its discretion and its findings of fact, conclusions of law, and orders were properly entered.

¶26 Affirmed.

/S/ JIM RICE

We concur:

/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ DIRK M. SANDEFUR