No. 01-533

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 126

FILED

IN THE MATTER OF DECLARING

M.W. AND L.W.

JUN 13 2002

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

Youths in Need of Care.

APPEAL FROM:     District Court of the Eighteenth Judicial District,
                 In and for the County of Gallatin,
                 The Honorable Mike Salvagni, Judge presiding.

COUNSEL OF RECORD:

        For Appellant (Father):

                Jennifer Wendt Bordy, The Angel Law Firm, Bozeman, Montana

        For Respondent:

                Hon. Mike McGrath, Attorney General; Micheal S. Wellenstein,
                Assistant Attorney General, Helena, Montana

                Marty Lambert, Gallatin County Attorney, Gary Balaz, Deputy County
                Attorney, Bozeman, Montana

                                        Submitted on Briefs:  December 20, 2001

                                                Decided:  June 13, 2002

Filed:

                                _____
                                Clerk

Justice Terry N. Trieweiler delivered the Opinion of the Court.

¶1     P.W., the father of M.W. and L.W., appeals from the Findings of Fact, Conclusions of Law and Order issued by the District Court for the Eighteenth Judicial District in Gallatin County, which awarded long-term custody of M.W. to the Department of Public Health and Human Services (DPHHS). We affirm the order of the District Court.

¶2     The sole issue on appeal is whether P.W. was denied fundamentally fair procedures in the proceedings by which the District Court awarded long-term custody of M.W. to DPHHS.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3     P.W. is the natural father of M.W. and L.W. M.W. was born on September 30, 1986. L.W. was born on April 16, 1984. P.W. is divorced from the children's natural mother, R.B., who had not seen her children for the nine years prior to these proceedings, and does not appeal from the District Court's order. The children have resided solely with P.W.

¶4     DPHHS removed M.W. and L.W. from P.W.'s care on July 19, 1999, and placed them in protective custody. On July 23, 1999, DPHHS filed a petition for temporary legal custody pursuant to §§ 41-3-401 and -406, MCA (1999), based on DPHHS' involvement with the children beginning in May of 1995. The District Court ordered M.W. and L.W. to remain in protective custody pending a hearing set for August 6, 1999. At that hearing, both P.W. and R.B. agreed to grant DPHHS temporary custody, based on their inability to care for the children's special needs. The District Court declared M.W. and L.W. to be youths in need of care and granted DPHHS temporary legal custody of the children for six months.

2

¶5 On February 4, 2000, DPHHS filed a petition for extension of its temporary legal custody, which was set to expire on February 6, 2000. Neither P.W. nor R.B. objected, and the guardian ad litem supported the extension. On February 17, 2000, the District Court granted the extension for another six months.

¶6 On September 1, 2000, DPHHS filed a petition for long-term custody, and requested: (1) that a permanency hearing be held; (2) that following that hearing, the District Court grant DPHHS long-term custody of M.W. and L.W.; and (3) that long-term custody become the permanency plan for the children. DPHHS explained that the children were not ready to return to their parents' care based on the severity of their ongoing psychological and emotional problems. On September 12, 2000, the District Court ordered temporary legal custody to continue "from August 17, 2000, until the hearing on the [long-term custody] petition." The hearing was originally set for November 14, 2000, but was rescheduled by the District Court for December 4, 2000, because of a scheduling conflict.

¶7 At the start of the December 4, 2000, hearing, DPHHS moved for a continuance, based on its previous belief that the parents were going to agree to the long-term custody petition. Based on that belief, DPHHS did not subpoena the children's therapists as witnesses. The basis for DPHHS' petition for long-term custody was not the parents' refusal or failure to comply with their treatment plans, but that pursuant to § 41-3-412(6)(c)(i), MCA (1999), the children had emotional or mental handicaps so severe that the children could not function in a family setting. Therefore, testimony from the children's therapists would have been necessary to determine the extent of the children's emotional or mental handicaps.

3

¶8     P.W. objected to the continuance as highly prejudicial. The District Court denied DPHHS' motion for a continuance, stating:

> [T]he Department and the County Attorney's office has had adequate and sufficient time to be prepared for the hearing today. There's not been a permanency plan hearing within the twelve months required by law if we have to do that. So we're going to proceed. If the Court were to continue this, the Court could not hear this case in December, and I'm not certain if the Court could hear it in January so we're proceeding.

DPHHS, therefore, presented its case with one witness, the State social worker assigned to the case. The social worker testified that P.W. had completed his parenting plan, yet believed that neither parent was capable of providing for the needs of the children. Following the social worker's testimony, the DPHHS attorney stated, "I don't have further questions for Ms. Bennett at this time." P.W., in turn, moved to dismiss the petition based on DPHHS' failure to meet its burden of proof. DPHHS argued that it had not rested its case and that given the nature of the hearing, the guardian ad litem should be permitted to testify before any decision was made. Furthermore, DPHHS argued that the guardian's testimony could be relied upon to satisfy its burden of proof.

¶9     The District Court denied P.W.'s motion to dismiss and the guardian was allowed to testify. The guardian testified that she had not had any contact with the children directly, nor had she spoken directly with either of the children's primary therapists. However, based on her contact with P.W., P.W.'s therapist, R.B. by telephone, "the guardian program," the prior guardian, and the social worker, she recommended that DPHHS be awarded long-term custody of both children.

4

¶10 P.W. raised a hearsay objection because of the guardian's lack of direct contact with any professional who could prove the children's mental or emotional handicaps. The Court overruled the objection, stating:

> Section 41-3-303(3) says that "*Information contained in a report filed by the guardian ad litem or testimony regarding a report filed by the guardian ad litem is not hearsay when it is used to form the basis of the guardian ad litem's opinion as to the best interests of the child.*"

¶11 In response, P.W. challenged the constitutionality of § 41-3-303(3), MCA (1999), as a violation of his right to confront the expert witnesses on whom the guardian had based her opinions. Given the significance of the legal issue, the District Court admitted that the constitutional issue would have to be resolved before a final decision could be made. In the interim, the District Court heard the guardian's testimony subject to P.W.'s objection, and reserved its ruling on the objection pending further briefing. The guardian's attorney also called P.W. as a witness. He testified that although his children continued to have severe mental and emotional problems, he would be able to obtain the professional help required to assist his children.

¶12 During P.W.'s case-in-chief, P.W.'s therapist testified that P.W. was capable of caring for M.W. in a family setting pursuant to a reunification plan which she and P.W. had developed at the social worker's suggestion. At the conclusion of testimony, P.W. renewed his motion to dismiss. In ruling on the motion, the District Court considered the ramifications of its decision. The following exchange occurred:

P.W.'s Counsel: If you recall a year and a half ago when we first came, he [P.W.] was willing to submit – he's always wanted their

|                  |                                                                                                                                                                   |
|------------------|-------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|                  | [DPHHS] help and their services. He realizes this isn't a normal family where the kids go off to school, come home, eat dinner type of situation. But as the Court observed and he strongly feels, they have not gotten better in a year and a half of total loss of his control so he wants at least some of the control back. |
| Court:           | I understand that but it's either the Department or no.                                                                                                            |
| P.W.'s Counsel:  | Based on the fact they didn't present the necessary testimony, yes.                                                                                                |
| Court:           | No, no, let's set that aside. If the Court dismisses the petition, the Department [DPHHS] is out of it; they're out of it.                                         |
| P.W.'s Counsel:  | They [P.W.] can provide services without the Court intervention.                                                                                                   |
| Court:           | Well, but there's nothing that says that they would.                                                                                                               |
| P.W.'s Counsel:  | True.                                                                                                                                                              |
| Court:           | They're [DPHHS] out of it for all practical purposes, legal purposes; they're out of it. And I'm not hearing him say that he wants them out of it.                |
| P.W.'s Counsel:  | Your Honor, he wouldn't be saying that to tell you the truth.                                                                                                      |

The District Court denied P.W.'s renewed motion to dismiss. The District Court granted P.W. visitation rights to M.W. in the form of one telephone call per week and one in-person visit every month.

¶13 The parties briefed the constitutional issue and on January 26, 2001, the District Court issued a Memorandum and Order sustaining P.W.'s objection to the use of the hearsay testimony by the guardian. It held that:

6

[T]he language of § 41-3-303(3), which allows the hearsay presentation by the guardian ad litem of what would otherwise be considered expert testimony, violates Article II, Section 24, of the Montana Constitution as that section is applied to the objectionable evidence before the Court, in that it is a fundamentally unfair violation of a parent's right to confrontation.

Based on that determination, the District Court ordered:

Considering that this issue is an issue of first impression and with the intent to determine the best interests of the youth on the merits of this matter, the Department shall be given another opportunity to present its case to the Court."

¶14 A second hearing was held on February 28, 2001. At that hearing, both P.W. and R.B. agreed that DPHHS should have long-term custody of L.W. With respect to M.W., P.W. objected to giving DPHHS another opportunity to present its case when it had failed to sustain its burden of proof at the December 4, 2000, hearing. The District Court denied P.W.'s objection. DPHHS then called M.W.'s former and present therapists to testify, as well as the group home manager of the facility where M.W. was then residing. On March 28, 2001, the District Court entered its Findings of Fact, Conclusions of Law and Order, and granted long-term custody of M.W. and L.W. to DPHHS. The District Court concluded that M.W. "cannot function in a family setting residing with his father." The District Court allowed P.W. continued visitation.

¶15 On May 24, 2001, P.W. appealed the District Court's Findings of Fact, Conclusions of Law and Order of March 28, 2001, and that portion of the Memorandum and Order entered January 26, 2001, where the District Court allowed DPHHS "another opportunity to present its case."

## STANDARD OF REVIEW

¶16 We review a district court's conclusions of law to determine whether they are correct. *Matter of D.H.* (1994), 264 Mont. 521, 525, 872 P.2d 803, 805. This Court has recognized that "a natural parent's right to care and custody of a child is a fundamental liberty interest, which must be protected by fundamentally fair procedures." *Matter of R.B.* (1985), 217 Mont. 99, 103, 703 P.2d 846, 848.

¶17 Furthermore, when determining custody, the district court is "bound to give primary consideration to the physical, mental, and emotional conditions and needs of the children." *Matter of C.M.* (1997), 281 Mont. 183, 187, 932 P.2d 1063, 1066. The best interests of the child are paramount in child custody cases and must take precedence over parental rights. *C.M.*, 281 Mont. at 187, 932 P.2d at 1066; *Matter of B.N.* (1990), 245 Mont. 511, 517-18, 802 P.2d 1244, 1248.

## DISCUSSION

¶18 The sole issue on appeal is whether P.W. was denied fundamentally fair procedures in the proceedings by which the District Court awarded long-term custody of M.W. to DPHHS.

¶19 To begin, we should note that although P.W. originally challenged DPHHS' petition for long-term custody with respect to both M.W. and L.W., we interpret this appeal as related only to M.W. At the February 28, 2001, hearing, P.W. conceded that DPHHS should have long-term custody of L.W. Furthermore, at the conclusion of P.W.'s brief filed for this appeal, P.W. requests this Court to "reverse the district court's grant of long term custody of

M.W. to the Department of Public Health and Human Services." Accordingly, we will limit our review to M.W.

¶20 P.W. alleges that he was denied fundamentally fair procedures in five areas. Specifically, P.W. contends that: (1) the District Court failed to hold a permanency plan hearing within the statutory deadline; (2) DPHHS failed to submit a statutorily-required pre-hearing report to the District Court; (3) DPHHS failed to develop a plan with any elements of permanency; (4) DPHHS tried to terminate P.W.'s parental rights without satisfying the requisite statutory criteria and burden of proof; and (5) the District Court erroneously granted DPHHS a second chance to prove its case. We will address each claim in turn.

¶21 P.W. first contends that the District Court failed to hold a permanency plan hearing within the statutory deadline. Section 41-3-412(1), MCA (1999), provided in pertinent part:

> A permanency plan hearing must be held by the court no later than 12 months after the initial court finding that the child has been subjected to abuse or neglect or 12 months after the child's first 60 days of removal from the home, whichever comes first, unless the proceeding has been dismissed, the child was not removed from the home, or the child has been returned to the child's parent or guardian.

On July 19, 1999, M.W. was removed from the home of P.W. On July 23, 1999, the District Court found probable cause to believe that M.W. had been abused or neglected or was in danger of being abused or neglected. Therefore, by law, the permanency plan hearing should have occurred prior to July 23, 2000. On September 1, 2000, DPHHS petitioned the District Court to schedule a permanency plan hearing, and award long-term custody.[1] The District

---

[1] However, P.W. did not file a motion to dismiss based on DPHHS' failure to timely file the petition for long-term custody. In Appellant's brief, P.W. concedes, "P.W. did not raise

Court set a hearing date for November 14, 2000, and subsequently rescheduled that hearing for December 4, 2000. Therefore, it is undisputed that the permanency plan hearing in this case occurred after the statutory deadline.

¶22 P.W. now contends that the District Court's failure to hold a timely permanency plan hearing deprived him of a fundamentally fair procedure. However, before making that argument to this Court, it was necessary that he make the same argument to the District Court as well as advise the District Court of the appropriate remedy. P.W. failed to do so.

¶23 Prior to the hearing, in his Proposed Findings of Fact, Conclusions of Law, and Order filed on December 1, 2000, P.W. stated in a proposed conclusion of law:

> Section 41-3-412(1), MCA, requires the Court to conduct a permanency plan hearing no later than 12 months after its initial finding that a child is abused or neglected, or 14 months after a child has been removed, whichever comes first. Neither of these deadlines was met in this case.

However, P.W. did not suggest to the District Court that it was without authority to proceed for that reason and did not request dismissal of the petition. Objections primarily serve two purposes: (1) to give the district court an opportunity to correct the problem and (2) to preserve the issue for appeal. *State v. Bird*, 2001 MT 2, ¶ 54, 308 Mont. 75, ¶ 54, 43 P.3d 266, ¶ 54. P.W.'s proposed conclusion merely brought the problem to the District Court's attention. It made no suggestion how to correct the problem. Therefore, the proposed conclusion of law did not, by itself, constitute a proper objection.

---

the Department's untimeliness in filing the petition as grounds to dismiss the proceeding in the court below, and is not now asking this Court to do so on that basis."

10

¶24 P.W. next contends that he was denied a fundamentally fair procedure when DPHHS failed to submit the statutorily-required pre-hearing report at least three days prior to the permanency plan hearing. Section 41-3-412(2), MCA (1999), provided:

> (2) At least 3 days prior to the permanency plan hearing, the department and the guardian ad litem shall each submit a report regarding the child to the court for review. The report must contain the:
> (a) efforts and progress demonstrated by the child's parent or guardian to complete a treatment plan;
> (b) extent to which the parent or guardian cooperated and used the services provided;
> (c) status of the child, including the child's mental, physical, and psychological health; and
> (d) plan for permanency for the child, including specific times for achieving the plan.

¶25 It is undisputed that DPHHS failed to submit the required pre-hearing report. However, like the District Court's failure to hold a timely permanency plan hearing, P.W. failed to properly object to DPHHS' course of conduct either at the hearing or in a prehearing motion. At the hearing, the District Court questioned DPHHS about the absence of the report:

> Court: You're petitioning the Court to develop a permanency plan, however, there was no permanency plan and now I'm talking about this case. Where is the report regarding the child for the Court to review with respect to a permanency plan? Where is the report. The statute requires the Department to do that.
>
> DPHHS: Yes, it does.
>
> Court: Where is that?
>
> DPHHS: One has not been done.
>
> Court: It should have been done at least three days before today.

11

DPHHS: Yes. That again is something that I should have reminded them to do because I read the same statute.

Despite the fact that the Court raised the issue and DPHHS acknowledged its error, P.W. failed to state an objection at that time and demonstrate or even allege resulting prejudice.

¶26 As with the timeliness of the hearing, P.W. did raise the issue as a proposed conclusion of law in his Proposed Findings of Fact, Conclusions of Law, and Order, stating:

> Section 41-3-412(2), MCA, requires both the Department and the guardian *ad litem* to each submit a report to the Court at least 3 days before the hearing. The Department and guardian both failed to do so.

However, once again, no specific relief was requested and, as before, we conclude that the proposed conclusion was an insufficient objection by which to preserve this issue for appeal.

¶27 The third alleged denial of a fundamentally fair procedure was DPHHS' failure to develop a plan with any elements of permanency that would enable M.W. to move toward a settled placement. P.W. complains of the frequency with which M.W. was transferred between treatment facilities and the inability of DPHHS to "stick to a plan of action." DPHHS, on the other hand, contends that M.W.'s movement between treatment facilities was first and foremost in response to his best interests and to treat his severe emotional and behavioral needs. In addition, DPHHS notes that it is sometimes difficult to place children due to waiting lists that exist at various treatment facilities.

¶28 We conclude there was substantial evidence that M.W. has reasonably progressed toward a settled placement. M.W. was initially placed at Billings Deaconess Clinic. On August 16, 1999, he was admitted into Children's Comprehensive Service (CCS) in Butte,

12

Montana. Dr. Jeffrey Watson, a licensed professional counselor at CCS, testified that M.W. had improved during his stay at CCS and was now less aggressive. On December 22, 2000, M.W. was moved to Skyview Group Home in Missoula, Montana. Bret Gilleo, M.W.'s Skyview therapist, testified of M.W.'s progress, stating, "[h]is behaviors are not as severe as they were when he first came in and he's only been there a little over two months and staff have been able to redirect him a little better. They're finding some of the cause for [M.W.'s] problems and some of the things that work well with him to help him redirect." When asked to give an estimate as to how much longer M.W. would need specialized care, Gilleo estimated that it would take from a year to a year and a half at a minimum. Finally, the Citizen's Review Board, a citizen board of the Eighteenth Judicial District, found that M.W.'s placement at Skyview was the "safest, most appropriate and least restrictive" placement and that "progress has been made toward achieving permanency." Given the substantial evidence in the record and our recognition that it often takes multiple facilities and a bit of trial-and-error to find the appropriate treatment facility, we agree that M.W. has made reasonable progress toward a settled placement.

¶29    P.W. next contends that because DPHHS repeatedly disallowed contact between P.W. and M.W., it attempted to terminate P.W.'s parental rights without adequate grounds and without meeting the necessary burden of proof. From June until September 2000, DPHHS worked toward reunification of M.W. and P.W., and urged liberal visitation. P.W. and his therapist, with the social worker's approval and input, developed a plan for M.W.'s return home. However, after DPHHS filed the petition for long-term custody on September 1,

2000, DPHHS refused to permit contact between P.W. and M.W., based on the recommendations of M.W.'s CCS treatment team which observed marked progress in M.W.'s therapy when he had no contact with P.W. and regression following contact.

¶30 Whether there was any merit to DPHHS' actions with respect to terminating visitation following September 1, 2000, however, is moot based on the District Court's reinstatement of visitation at the December 4, 2000, hearing. Where this Court can no longer grant effective relief, the issue is moot. *Shamrock Motors, Inc. v. Ford Motor Co.*, 1999 MT 21, ¶ 19, 293 Mont. 188, ¶ 19, 974 P.2d 1150, ¶ 19. Accordingly, we move to the next issue.

¶31 P.W. claims that he was denied a fundamentally fair procedure when the District Court allowed DPHHS a second opportunity at the February 28, 2001, hearing to prove that M.W. had severe mental and emotional handicaps which required long-term custody with DPHHS. P.W. contends that DPHHS sought to repeatedly litigate the issue, "until it could get its act together sufficiently to support its allegations." Because DPHHS failed to present any evidence that supported long-term custody at the first hearing and failed to meet its burden, P.W. contends that the petition should have been dismissed.

¶32 We disagree. At the December 4, 2000, hearing, P.W. objected to the constitutionality of § 41-3-303(3), MCA, based on its violation of his right to confront certain experts whose statements were influential in forming the basis for the guardian's recommendations regarding the children. The District Court reserved ruling on P.W.'s objection until after the parties briefed the issue, but allowed the guardian to testify in the interim. Subsequently, the

14

District Court sustained P.W.'s objection, and held that the guardian's report and testimony violated P.W.'s right to confrontation. The District Court then held:

> Considering that this is an issue of first impression and with the intent to determine the best interests of the youths on the merits of this matter, the Department shall be given another opportunity to present its case to the Court.

A second hearing was then set for February 28, 2001.

¶33 At the February 28, 2001, hearing, P.W. was provided the opportunity to confront and cross-examine M.W.'s therapists. We agree with the District Court that a dismissal of the petition after the December 4, 2000, hearing, and after the District Court sustained P.W.'s objection, would have required that the Court overlook the best interests of the child. While fundamentally fair procedures are guaranteed, a district court has a corresponding duty to consider the best interests of the child. Substantial evidence in the record existed to show that M.W. continued to suffer both emotionally and mentally. P.W. himself admitted that he alone was not capable of dealing with his children's needs. Furthermore, aside from the fact that substantive evidence was offered directly which had previously been offered indirectly but then excluded, prejudice to P.W. has not been demonstrated. Since it was P.W. who objected to the form of the evidence as first offered and since it was originally offered in a form authorized by statute, we conclude that M.W.'s best interests were paramount.

¶34 For the foregoing reasons, we affirm the judgment of the District Court.

_____
Justice

15

We Concur:

_Karla M. Gray_
Chief Justice

_[signature]_

_Jim Regnier_

_W. William Leaphart_
Justices