No. 00-258

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 195

IN THE MATTER OF T.E., M.E., and M.E.,

     Youths in Need of Care.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and for the County of Cascade,
Honorable Kenneth R. Neill, Judge Presiding

COUNSEL OF RECORD:

    For Appellant:

        Marge Johnson, Attorney at Law, Great Falls, Montana

    For Respondents:

        Honorable Mike McGrath, Attorney General; Cregg Coughlin, Assistant
Attorney General, Helena, Montana

        Brant Light, County Attorney, Great Falls, Montana

    For Youths:

        Debra Upton, Attorney at Law, Great Falls, Montana

Submitted on Briefs:   June 27, 2002

Decided:   September 5, 2002

FILED

SEP 05 2002

*Ed Smith*

Filed: CLERK OF SUPREME COURT
STATE OF MONTANA

Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1      F.E., the father of T.E., M.E., and M.E., appeals from the Findings of Fact, Conclusions of Law and Order issued by the District Court for the Eighth Judicial District in Cascade County terminating his parental rights to the children. We affirm the order of the District Court.

¶2      The sole issue on appeal is whether F.E. was denied fundamentally fair procedures in the proceedings by which the District Court terminated his parental rights.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3      On April 1, 1998, after six months of informal intervention with F.E., the Department of Public Health and Human Services (DPHHS or Department) removed the three children, T.E. (age 13), M.E.(age 4, referred to herein as Mi.E.), and M.E. (age 3, referred to herein as Ma.E.), from the home and from the care of their father, F.E. On April 3, 1998, DPHHS petitioned the District Court for temporary legal custody of the three children. The petition alleged a history of the parents' neglect, domestic violence, and drug and alcohol abuse, dating back to 1985.

¶4      More recently, the children were in the primary care of the mother of the two younger children until she was incarcerated in October 1997. Department visits to the home in October, November, and December 1997, determined a dirty home environment, not enough food in the home, and numerous people living in and moving in and out of the home. During these visits the home met minimal standards only one time, and the caseworker discovered

2

the younger children were either not dressed or dressed only in summer clothing. In one visit, a young woman, whom no one seemed to know, was living in the home and sharing a bedroom with T.E.

¶5 DPHHS received a referral on February 9, 1998, indicating that F.E. had been evicted and had moved to a new residence. Concern was expressed that F.E. was unable to properly parent his small children, that he was keeping T.E. home from school to help him watch the younger children and that he was sleeping and bathing with the younger children. Upon visiting the new residence, the caseworker found the home situation to be very disconcerting. The basement was knee deep in dirty clothes, and the upstairs living quarters were filthy. The living room was cluttered with garbage, dirty dishes, old food on the floor, and over-flowing ashtrays. In the kitchen, dirty dishes were stacked on the counters, in the sink, and on the stove. The bathroom was dirty, and there were piles of dirty clothing and sour towels on the floor. The caseworker was advised that F.E. was sharing the home with a woman and her four or five children.

¶6 In March 1998, F.E. posted bail for release of the children's mother from jail, and the caseworker received a report that she may be living in the house with F.E. and the children. Also during March, it was reported that the children's maternal grandmother was having to buy food for the children and cleaning supplies to maintain the home because F.E. had used all of his money to bail the mother out of jail or to buy drugs. Furthermore, F.E. and the

mother were fighting in front of the children and using drugs in the home. An IV syringe was found on the living room floor.

¶7 On March 23, 1998, the caseworker interviewed T.E., and during their discussion T.E. revealed that her brother J.E., a juvenile sex offender whom DPHHS investigated in 1996 for molesting his younger siblings, was being permitted by F.E. to stay in the home. T.E. also described herself as the primary care-giver to her younger sisters.

¶8 On March 27, 1998, the caseworker received another referral. The caller expressed concern about the younger girls and described them as very sexualized in their behaviors. One of the children was acting out sexually and masturbating, and there were concerns the children may have been sexually abused. The children were removed from the home on April 1, 1998.

¶9 At the show cause hearing on June 9, 1998, the District Court inquired whether F.E. had any objection to an order granting DPHHS temporary legal custody of the children. F.E.'s counsel stated that F.E. "understands the treatment plan has been prepared and he's willing to work the treatment plan and work to get his children back." On June 16, 1998, the District Court entered an order finding the children were youths in need of care and continuing temporary legal custody of the children for a period of six months. The order further directed the parents to "maintain regular contact with the social worker assigned to this case and promptly inform DPHHS as to any changes in address or phone number." The District Court set the disposition hearing, within thirty days, for July 14, 1998, but due to a

4

conflict in the court's calendar, the hearing was reset for August 11, 1998. At that time, F.E. requested a thirty-day continuance, because he intended to retain private counsel. The hearing was reset for September 1, 1998, but due to another conflict in the court's calendar, the hearing was reset for October 20, 1998.

¶10 At that time, F.E. testified that he had no objection to the treatment plan. F.E. signed the plan, and the District Court approved and adopted it.

¶11 A review hearing was held on December 8, 1998. F.E. was represented by counsel, but was not present due to his arrest and incarceration a few weeks earlier. The caseworker testified that F.E. had not completed any of the terms of the treatment plan and had not maintained contact with her, as was required by the order. Additionally, the caseworker requested that the temporary custody order be continued for six months. The District Court granted the request to continue the temporary custody order.

¶12 On March 9, 1999, DPHHS filed a petition to terminate F.E.'s parental rights because of his failure to comply with any of the terms of the treatment plan, which required F.E. to successfully complete parenting classes, obtain a chemical dependency evaluation and follow its recommendations, maintain sobriety, submit to random urinalyses, maintain adequate housing, and take a sex offender evaluation. F.E. had not completed any portion of the treatment plan at the time the petition to terminate parental rights was filed. At the June 1, 1999, hearing, F.E.'s counsel asked that the hearing be continued to allow F.E. to make a

good faith effort to complete the treatment plan, which the District Court granted, continuing the hearing until November 30, 1999.

¶13 During that hearing, a licensed clinical therapist testified that Mi.E. (age 4) had been the victim of some type of sexual abuse, but made no determination as to who had perpetrated the sexual assault on the child. As a result of the sexual assault, Mi.E. was sexually reactive which required a greater level of parental care. For this reason, Mi.E. was removed from standard foster care and placed in therapeutic foster care that was designed to address her needs and prevent her from hurting herself, pets, and other children. The termination hearing continued on December 14, 1999, and again on February 15, 2000. At the conclusion of the termination hearing the District Court found that the children had been previously adjudicated youths in need of care; an appropriate treatment plan had been in place for almost a year and a half; the treatment plan had not been complied with; and the conditions were not likely to change within a reasonable time. Based on those findings and conclusion, the District Court ordered that F.E.'s parental rights be terminated. F.E. now appeals that order.

## STANDARD OF REVIEW

¶14 We review a district court's decision to terminate parental rights to determine whether the district court abused its discretion. *In re E.K.*, 2001 MT 279, ¶ 31, 307 Mont. 328, ¶ 31, 37 P.3d 690, ¶ 31. On review of a decision to terminate parental rights, we determine whether the district court's findings of fact supporting termination are clearly erroneous. *In*

6

*re B.H.,* 2001 MT 288, ¶ 13, 307 Mont. 412, ¶ 13, 37 P.3d 736, ¶ 13. A finding of fact is clearly erroneous if it is not supported by substantial evidence, if the court misapprehended the effect of the evidence, or if upon on reviewing the record, this Court is left with the definite and firm conviction that the district court made a mistake. *In re E.K.,* ¶ 31. In reviewing a district court's conclusions of law, we determine if they are correct. *In re E.K.,* ¶ 31.

¶15    In determining whether to terminate parental rights, "the district court is bound to give primary consideration to the physical, mental, and emotional conditions and needs of the children," thus "the best interests of the children are of paramount concern in a parental rights termination proceeding and take precedence over the parental rights." *In re E.K.,* ¶ 33, quoting *In re J.W.,* 2001 MT 86, ¶ 8, 305 Mont. 149, ¶ 8, 23 P.3d 916, ¶ 8. We will presume that a district court's decision is correct and will not disturb it on appeal unless there is a mistake of law or a finding of fact not supported by substantial evidence that would amount to a clear abuse of discretion. *In re E.K.,* ¶ 33.

## DISCUSSION

¶16    Was F.E. denied fundamentally fair procedures in the proceedings by which the District Court terminated his parental rights?

¶17    F.E. alleges that he was denied fundamentally fair procedures by the failure of the Department and the District Court to: (1) hold a show cause hearing within 20 days after the initial order removing the children from the home as required in § 41-3-403(1)(c), MCA

7

(1997); (2) hold the dispositional hearing within 30 days of adjudicating the children youths in need of care pursuant to § 41-3-404(4)(b), MCA (1997); (3) show that returning the children to F.E. would create a substantial risk of harm to the children or detriment to the children's physical or emotional well-beings in granting temporary legal custody to DPHHS as required in § 41-3-406(2), MCA (1997); (4) provide reasonable services to F.E. to rehabilitate him and avoid removal of the children in accordance with § 41-3-403(2), MCA (1997); (5) state the reasons why the children were not returned home when extending temporary legal custody as required in § 41-3-406(6), MCA (1997); (6) hold the permanency plan hearing no later than twelve months after the initial order was issued pursuant to § 41-3-412, MCA (1997); and (7) investigate the homes of extended family members and place the children with extended family as required in § 41-3-101(4), MCA (1997).

¶18 Additionally, F.E. argues that the proceeding was made fundamentally unfair by the admission of "unsubstantiated sexual abuse allegations" against him. F.E. contends that the Department improperly introduced the testimony of Kaloni Taylor, Mi.E.'s therapist, who testified that Mi.E. told her that "daddy" taught her about touching private body parts, that "my daddy touched my pee pee" and that "my mom had sex with me." According to F.E., this testimony polluted the entire proceedings and influenced the District Court's decision to terminate his parental rights.

8

¶19 This appeal is the first time F.E. has raised any of these issues. The Department argues that F.E.'s failure to raise these issues in the District Court is a waiver which bars him from raising the claims on appeal.

¶20 This Court has consistently held that it will not consider issues raised for the first time on appeal. *In re D.H.*, 2001 MT 200, ¶ 41, 306 Mont. 278, ¶ 41, 33 P.3d 616, ¶ 41; *In re A.N.*, 2000 MT 35, 298 Mont. 237, 995 P.2d 427; *In re J.M.J.*, 1999 MT 277, 296 Mont. 510, 989 P.2d 840; *In re K.H.*, 1999 MT 128, 294 Mont. 466, 981 P.2d 1190; *In re S.M.*, 1999 MT 36, 293 Mont. 294, 975 P.2d 334; *In re R.B.O.* (1996), 277 Mont. 272, 921 P.2d 268. "As a general rule, we do not consider an issue presented for the first time on appeal because it is fundamentally unfair to fault the trial court for failing to rule correctly on an issue it was never given the opportunity to consider." *In re D.H.*, ¶ 41. In order to preserve a claim or objection for appeal, an appellant must first raise that specific claim or objection in the district court. *State v. Benson*, 1999 MT 324, ¶ 19, 297 Mont. 321, ¶ 19, 992 P.2d 831, ¶ 19. In the case of *In re M.W.*, 2002 MT 126, 310 Mont. 103, 49 P.3d 31, this Court determined that when an appellant argues he was deprived of a fundamentally fair procedure, "it [is] necessary that he make the same argument to the District Court." *In re M.W.*, ¶ 22. In that case, the appellant argued on appeal that the district court failed to hold a permanency plan hearing within the statutory deadline, but failed to properly raise that issue in the district court. Thus, we declined to address the issue on appeal. Likewise, in the case of *In re D.H.*, the appellants argued for the first time on appeal that the district court abused its discretion

by failing to order a less restrictive alternative to termination of parental rights. Because this argument was never presented to the district court, we declined to address that matter on appeal. *In re D.H.*, ¶ 41.

¶21 By failing to raise his objections in the District Court, F.E. has failed to properly preserve these issues for appeal and has waived his right to have these issues considered by this Court.

¶22 F.E. does not contest the Department's assertion that he failed to preserve his issues by raising them in the District Court. Rather, he contends that this Court should overlook that failure and hold that the Department must strictly comply with statutory procedures, whether or not a parent makes objection to asserted procedural violations in the district court, and should declare void any proceeding which does not satisfy every statutory requirement. Such a ruling, argues F.E., would "[ensure] that the process is in fact fair and that the State does not abuse its very substantial power in removing children and terminating families."

¶23 The requirement that litigants object to asserted statutory violations in the district court serves purposes greater than simply preserving issues for appeal. A district court cannot correct statutory deficiencies if those concerns are not brought to its attention during the course of the proceeding, and for that reason, we have held that a district court will not be faulted for failing to address such issues. *In re D.H.*, ¶ 41, and *In re J.M.J.*, ¶ 31. To implement a contrary policy in child cases, as F.E. urges, would encourage litigants to withhold objections in the district court, instead of appropriately raising issues during the

course of the proceedings. Numerous cases would be reversed on issues never considered by the district court, and the integrity of the district court proceedings would be undermined. The Department would be required to re-initiate protective proceedings for the involved children, and the prolonged litigation resulting therefrom would directly conflict with the primary consideration which the law gives to the child's best interest, and the requirement that child cases be expedited, so that cases can be resolved, and children can be provided permanent, caring home environments as soon as possible. We decline such an invitation.

¶24 Based on the forgoing, this Court declines to consider F.E.'s claims, and concludes that the District Court did not abuse its discretion in terminating F.E.'s parental rights. Its decision is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

11