No. 02-312

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 154

IN THE MATTER OF A.T. and J.T.,

      Youths in Need of Care.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone, Cause No. DN 00-097,
The Honorable Maurice R. Colberg, Jr., and Gregory R. Todd, Judges
presiding.

COUNSEL OF RECORD:

      For Appellant (Mother):

            Kevin T. Sweeney, Sweeney & Healow, Billings, Montana

      For Appellant (Father):

            Nancy Wetherelt, Wetherelt Law Office, Billings, Montana

      Guardian Ad Litem (For Children):

            Patrick E. Kenney, Kenney Law Firm, P.C., Billings, Montana

      Guardian Ad Litem (For Mother):

            Damon Gannett, Attorney at Law, Billings, Montana

      For Respondent:

            Hon. Mike McGrath, Attorney General; Jennifer Anders,
Assistant Attorney General, Helena, Montana

            Dennis Paxinos, Yellowstone County Attorney, Richard Helm, Deputy
County Attorney, Billings, Montana

                    Submitted on Briefs:  October 24, 2002
                            Decided:   June 3, 2003

Filed:

                                      Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1     The Appellants, mother S.B. and father J.T., appeal from the Findings of Fact, Conclusions of Law, and Order entered by the Thirteenth Judicial District Court, Yellowstone County, which terminated their parental rights with respect to A.T. and J.T. We affirm in part and reverse in part the order of the District Court.

¶2     The parties present the following issues on appeal:

¶3     1.  Did the District Court erroneously impose the State's burden of proof upon the mother?

¶4     2.  Did the District Court abuse its discretion when it terminated the father's parental rights?

BACKGROUND

¶5     On October 23, 2000, the Yellowstone County Attorney's Office, on behalf of the Department of Public Health and Human Services ("DPHHS"), filed a Petition for Temporary Investigative Authority and Emergency Protective Services. The petition sought to temporarily remove A.T., a nine month old boy, from his mother's care. DPHHS requested the temporary investigative authority following a parole violation report which indicated that the mother's urine tested positive for methamphetamine and marijuana. The mother was pregnant with another child at the time of the positive test. A.T.'s father was incarcerated at the time DPHHS requested the temporary investigative authority. The District Court granted DPHHS's petition on October 24, 2000, and DPHHS arranged for A.T. to live with his paternal grandmother during the investigative period. On November 17,

2

2000, the District Court extended DPHHS's temporary investigative authority for an additional ninety days, without objection.

¶6    On December 10, 2000, the mother gave birth to J.T. On December 22, 2000, the District Court granted DPHHS temporary investigative authority over J.T., without objection from the parents. On February 6, 2001, DPHHS requested that the District Court declare A.T. and J.T. youths in need of care and award temporary custody of the children to DPHHS for a period of six months. The District Court granted DPHHS's motion and ordered the parents to complete treatment plans, discussed in greater detail below.

¶7    On November 6, 2001, DPHHS moved the District Court to terminate the parents' parental rights with respect to A.T. and J.T. and grant permanent legal custody of the children to it. DPHHS sought the above relief based upon the parents' failure to comply with the treatment plans and inability to provide for and protect the children. The District Court held hearings on DPHHS's motion on November 30 and December 5, 2001. In late November 2001, the children's mother was sentenced to five years in the Montana Department of Corrections for bail jumping. Further, as of February 2002, the mother awaited a hearing on a petition to revoke a probationary sentence from Yellowstone County on charges of bail jumping and assault on a peace officer. As of the hearing dates, the children's father remained incarcerated.

¶8    The District Court entered its Findings of Fact, Conclusions of Law, and Order on February 6, 2002. The court found that the parents did not comply with their treatment plans, the plans were not successful, and that both parents were "subject to judicially ordered

3

long-term confinement and will be incarcerated for more than one year." Based, in part, on the long-term incarcerations, the court concluded that the parents' conduct rendering them unfit to parent was not likely to change within a reasonable time. Accordingly, the District Court terminated the parents' parental rights with respect to A.T. and J.T. and granted custody of the children to DPHHS, assigning to DPHHS the right to consent to the children's adoption. Both parents appeal from the District Court's order of termination.

## STANDARD OF REVIEW

¶9 A district court's decision to terminate parental rights is discretionary and we review that decision to determine whether the court abused its discretion. *In re J.W.*, 2001 MT 86, ¶ 7, 305 Mont. 149, ¶ 7, 23 P.3d 916, ¶ 7. In reviewing a decision to terminate parental rights, we determine whether the district court's findings of fact supporting termination are clearly erroneous and whether the district court's conclusions of law are correct. *In re C.B.*, 2001 MT 42, ¶ 6, 304 Mont. 252, ¶ 6, 20 P.3d 117, ¶ 6. A finding of fact is clearly erroneous if it is not supported by substantial evidence; if the district court misapprehended the effect of the evidence; or if, after reviewing the record, this Court is left with a definite and firm conviction that the district court made a mistake. *In re J.N.*, 1999 MT 64, ¶ 11, 293 Mont. 524, ¶ 11, 977 P.2d 317, ¶ 11.

¶10 This Court has further stated that a natural parent's right to care and custody of a child is a fundamental liberty interest which must be protected by fundamentally fair procedures. *In re J.N.*, ¶ 12. Thus, before terminating an individual's parental rights, a district court must adequately address each applicable statutory requirement. *In re J.N.*, ¶ 12. The party

4

seeking to terminate an individual's parental rights has the burden of proving by clear and convincing evidence that the statutory criteria for termination have been met. *In re J.N.*, ¶ 12.

DISCUSSION

ISSUE ONE

¶11 Did the District Court erroneously impose the State's burden of proof upon the mother?

¶12 The mother claims that the State's experts admittedly knew "little of Mother's compliance with the goals and tasks of the treatment plan prepared by [DPHHS]." The mother asserts that since the State failed to present evidence regarding her compliance with the treatment plans and since the District Court terminated her parental rights, we must assume that the District Court obligated the mother to disprove DPHHS's case. This, the mother argues, constitutes an impermissible shifting of the burden of proof.

¶13 Section 41-3-609, MCA, provides in relevant part:

> (1) The court may order a termination of the parent-child legal relationship upon a finding that any of the following circumstances exist:
>
> . . . .
>
> (f) the child is an adjudicated youth in need of care and both of the following exist:
>
> (i) an appropriate treatment plan that has been approved by the court has not been complied with by the parents or has not been successful; and
>
> (ii) the conduct or condition of the parents rendering them unfit is unlikely to change within a reasonable time.

5

(2) In determining whether the conduct or condition of the parents is unlikely to change within a reasonable time, the court shall enter a finding that continuation of the parent-child legal relationship will likely result in continued abuse or neglect or that the conduct or the condition of the parents renders the parents unfit, unable, or unwilling to give the child adequate parental care. In making the determinations, the court shall consider but is not limited to the following:

. . . .

(d) present judicially ordered long-term confinement of the parent.

¶14 The treatment plan which the mother signed and the court approved contained various goals and tasks. The plan, in part, required the mother to: apply for a chemical dependency treatment program; attend NA or AA meetings three times per week and provide weekly written verification of these meetings to the social workers; provide random urinalysis tests to DPHHS; maintain a residence and income; inform DPHHS of where she resided and of her employment status; make an appointment for anger management assessment and follow the assessment's recommendations; sign a release for the exchange of information between the anger management professionals and DPHHS; obtain a psychological evaluation; sign a release for the exchange of information between the psychological evaluators and DPHHS; and maintain regularly scheduled visits with A.T. and J.T.

¶15 Heidi Kimmet, a social worker with DPHHS, provided testimony about the mother's compliance with the treatment plan. Kimmet testified that: she received no verification that the mother completed a chemical dependency treatment program; she received no verification that the mother attended NA or AA meetings; the mother provided no samples for urinalysis tests during the applicable time; the mother did not maintain a residence of her

6

own or pursue employment; the mother did not provide verification that she completed an anger management program; the mother did not obtain a psychological evaluation or provide a release for the exchange of information between the psychological evaluators and DPHHS; and that the mother failed to attend regularly scheduled visits with A.T. and J.T. For the foregoing reasons, Kimmet concluded that the mother failed to comply with the treatment plan, that the mother did not demonstrate any significant progress during Kimmet's involvement with the case, and that a continuing parental relationship between the mother and the children would result in continued damage to the children.

¶16 On appeal, the mother emphasizes that Kimmet failed to independently investigate the mother's compliance with the treatment plan. The mother states that Kimmet's reliance solely on the mother's failure to provide verification amounts to an impermissible shifting of the State's burden. However, the treatment plan in question clearly imposed affirmative obligations upon the mother. The evidence presented at trial establishes that the mother failed to satisfy her obligations under the treatment plan. Therefore, we conclude that the District Court did not erroneously impute the State's burden of proof to the mother. Likewise, we hold that the District Court did not abuse its discretion when it terminated the mother's parental rights to A.T. and J.T.

ISSUE TWO

¶17 Did the District Court abuse its discretion when it terminated the father's parental rights?

7

¶18 On June 8, 2001, the father agreed to the terms of a treatment plan, established by DPHHS, which sought to safely return the children to the family's custody. The plan was in effect from May 4, 2001, to November 4, 2001. The District Court approved the plan on June 13, 2001.

¶19 The treatment plan articulated three goals: (1) to maintain a chemically free lifestyle, (2) to establish a consistent and stable lifestyle, and (3) to establish a safe environment and a healthy relationship with the children. To effectuate the above goals, the father had to: abstain from using mood altering chemicals; address his criminal charges and abstain from further criminal behavior; maintain a residence and income upon release from incarceration; abide by the no-contact order with regard to the mother; contact his social worker on a weekly basis; attend and complete anger management classes; and attend and complete parenting classes.

¶20 At the permanent custody hearing, Kimmet testified that the residential and employment requirement proved inapplicable to that point as the father remained incarcerated for the duration of the treatment plan. Kimmet further testified that the father completed or satisfied five of the remaining six applicable tasks. Kimmet testified that the parenting class was the only task which the father had yet to complete. However, Kimmet stated that she was not sure whether the detention facility had a parenting class available for the father to complete. Based on Kimmet's testimony, the father argues that the District Court erred when it concluded that he failed to comply with the treatment plan and that the treatment plan was not successful. We agree.

8

¶21    As Chief Justice Gray pointed out in her special concurrence to *Matter of J. S.* (1994), 269 Mont. 170, 178-79, 887 P.2d 719, 724, "[a] treatment plan is intended to be a good faith, joint effort by both the [DPHHS] and the parent to preserve the parent-child relationship and the family unit." DPHHS developed the father's treatment plan for the period of May 4, 2001, to November 4, 2001. As of the time of the permanency proceedings, the father had been incarcerated continuously since April 11, 2001. It appears from the record that DPHHS was aware of the father's December 2003 discharge date at the time it developed the treatment plan. Therefore, DPHHS developed the treatment plan with the knowledge that the father would remain incarcerated throughout the plan's applicable period.

¶22    Presumably, the father received and executed the treatment plan under the assumption that compliance with the plan would lead to preservation of his right to parent A.T. and J.T. upon his release from incarceration. To this end, by Kimmet's own admission, the father completed five of the six applicable treatment plan obligations. The record offers no insight into why the father did not complete the parenting classes, i.e., whether he intentionally evaded the obligation or whether the classes were unavailable to him. Regardless of the father's conformance to the plan, the District Court concluded, in part, that the father's long-term incarceration rendered the treatment plan unsuccessful.

¶23    This case strikes us as a realization of Chief Justice Gray's lament in *Matter of J. S.* There Chief Justice Gray expressed concern for "trapping the parent into an inability to successfully complete the program within the time allotted." *Matter of J. S.*, 269 Mont. at

179, 887 P.2d at 724. Here, DPHHS could have requested termination of the father's parental rights pursuant to § 41-3-609(4)(c), MCA, which provides:

> A treatment plan is not required under this part upon a finding by the court following hearing if the parent is or will be incarcerated for more than 1 year and reunification of the child with the parent is not in the best interests of the child because of the child's circumstances, including placement options, age, and developmental, cognitive, and psychological needs[.]

However, with regard to this provision's application, the State concedes that "[s]ince the court approved a treatment plan in this case, and ultimately found that it was not complied with and was not successful, the relevance of the one-year incarceration period is questionable."

¶24 DPHHS did not invoke § 41-3-609(4)(c), MCA, in its petition for permanent legal custody and termination of parental rights. DPHHS sought termination of the father's parental rights solely on the basis of § 41-3-609(1)(f), MCA. One of the State's own witnesses, Kimmet, agreed that the father complied with five of the six treatment plan obligations. Nevertheless, it appears that the District Court deemed the plan unsuccessful because of the father's long-term incarceration, a status known to DPHHS when it developed the plan. To develop a treatment plan with knowledge of a parent's incarceration status, exact compliance with the plan, and then terminate the parental rights because the incarceration rendered the plan unsuccessful does not suggest a good faith effort by DPHHS to preserve the parent-child relationship and the family unit.

¶25 Based on the foregoing, we hold that the District Court abused its discretion when it terminated the father's parental rights to A.T. and J.T. pursuant to § 41-3-609(1)(f), MCA.

10

Further, DPHHS did not raise § 41-3-609(4)(c), MCA, in its petition for permanent legal custody and termination of parental rights. Accordingly, that provision cannot support termination of the father's parental rights.

¶26 Affirmed in part, reversed in part, and remanded for the District Court to vacate the portion of its order which terminated the father's parental rights.

/S/ JIM REGNIER

We Concur:

/S/ KARLA M. GRAY
/S/ W. WILLIAM LEAPHART
/S/ JAMES C. NELSON
/S/ JIM RICE