No. 03-501

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 52N

IN THE MATTER OF D.T. and K.J.D.M.,

    Youths in Need of Care.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone, Cause No. DN 2001-079
The Honorable Gregory R. Todd, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Nancy Schwartz, Attorney at Law, Billings, Montana

    For Respondent:

        Hon. Mike McGrath, Montana Attorney General, Jennifer Anders, Assistant
Attorney General, Helena, Montana; Dennis Paxinos, Yellowstone County
Attorney, Billings, Montana

    For Youths:

        Pattrick Kenney, Attorney at Law, Billings, Montana (Guardian ad Litem)

Submitted on Briefs:  February 10, 2004

Decided:  March 2, 2004

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent. It shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2 S.L. is the biological mother of two minor children, D.T. and K.J.D.M. In April 2003, the Thirteenth Judicial District Court, Yellowstone County, issued its Order terminating S.L.'s parental rights to both children. S.L. appeals. We affirm.

¶3 The Department of Public Health and Human Services (DPHHS) first became involved with S.L. when S.L. was a child. DPHHS received numerous referrals about the physical abuse and neglect of S.L. while in the care of her mother. S.L. was fifteen years old when she gave birth to D.T. in October 1997. S.L. was offered services, and when she and the baby moved in with D.T.'s paternal grandparents, DPHHS closed its case. Although S.L. later moved out, D.T. remained in the care of her paternal grandparents.

¶4 The current action began in August 2001 when S.L. gave birth to K.J.D.M. who was immediately removed from S.L.'s care. Within days of K.J.D.M.'s birth, DPHHS filed a Petition for Temporary Investigative Authority and Emergency Protective Services naming both children. In September 2001, social worker Merry Richmond was assigned the case. On June 26, 2002, both children were adjudicated as youths in need of care and DPHHS was granted temporary legal custody. D.T. remained in the care of her paternal grandparents.

S.L. had informed DPHHS that R.M. was the father of K.J.D.M. S.L. later stated it was possible that P.T., the father of D.T., was also the father of K.J.D.M. Paternity testing confirmed that P.T. was the father, and R.M. was excused from the case. K.J.D.M. had been placed in foster care until his paternity was determined. He was then placed with D.T. in the care of their grandparents. P.T. signed a waiver of parental rights to both D.T. and K.J.D.M. and is not a party to this appeal.

¶5 In December 2002, DPHHS filed for permanent legal custody and for the termination of S.L.'s parental rights. DPHHS alleged that S.L. could not be located, and the County Attorney filed a motion for service by publication and supporting memorandum, along with an Affidavit of Attempt to Locate from Richmond. The District Court granted the motion and notice of the hearing was placed in the Billings Gazette on three consecutive weeks. A copy of the Order setting the hearing date was served on S.L.'s appointed counsel.

¶6 On February 14, 2003, the District Court held a proceeding which was bifurcated into a permanency plan hearing and a hearing on DPHHS's petition for termination of parental rights. In attendance were an attorney from the County Attorney's Office representing DPHHS, social worker Richmond, a court-appointed guardian ad litem, and attorneys appointed to represent R.M., P.T., and S.L. Neither R.M., P.T., nor S.L. were present. The attorneys for R.M. and P.T. were excused at the start of the proceeding. S.L.'s attorney remained.

¶7 During the permanency plan hearing, Richmond testified that DPHHS had developed a permanency plan for D.T. and K.J.D.M. to be adopted by their paternal grandparents. The

3

Court then moved on to the hearing on the petition for termination of parental rights. Richmond testified that she had last seen S.L. in person on April 26, 2002, and had last spoken with her on the telephone on July 16, 2002. Richmond stated that S.L. had last visited her children on April 5, 2002. Richmond testified she did not know S.L.'s current whereabouts. Richmond explained that she had developed two treatment plans for S.L., but S.L. had not signed either one, and failed to complete them.

¶8 Richmond was cross-examined by Nancy Schwartz, S.L's court-appointed attorney. Richmond admitted that the second treatment plan had been sent to S.L.'s attorney, and possibly to S.L.'s last known address, but Richmond did not know if S.L. had received a copy of it. Richmond further testified in detail to efforts she made to locate S.L. after losing contact with her in July 2002.

¶9 The District Court found that S.L. was served with notice by publication. The District Court further found that S.L. did not comply with the court-approved treatment plan, and that she appeared to be "unfit, unable or unwilling to parent" D.T. and K.J.D.M.

¶10 The District Court concluded that D.T. and K.J.D.M. continued to be youths in need of care, and that clear and convincing evidence showed that continuing the parent-child legal relationship would likely result in continued abuse and neglect. It further concluded that service of notice of the hearing was perfected on S.L. in accordance with the Montana Rules of Civil Procedure and §§ 41-3-428 and 41-3-429, MCA. The District Court thus terminated S.L.'s parental rights in D.T. and K.J.D.M.

¶11 S.L. appeals the Order and corresponding Judgment on the grounds that the

4

proceeding should be declared void as the service of process upon her by publication was defective.

¶12 A district court's decision to terminate parental rights is discretionary and we review that decision to determine whether the court abused its discretion. In reviewing a decision to terminate parental rights, we determine whether the district court's findings of fact supporting termination are clearly erroneous and whether the district court's conclusions of law are correct. *In re A.T.*, 2003 MT 154, ¶ 9, 316 Mont. 255, ¶ 9, 70 P.3d 1247, ¶ 9. (Internal citations omitted.) A natural parent's right to care and custody of a child is a fundamental liberty interest which must be protected by fundamentally fair procedures. *In re A.T.*, ¶ 10. (Citations omitted.)

¶13 We have determined to decide this case pursuant to our Order dated February 11, 2003, amending Section 1.3 of our 1996 Internal Operating Rules and providing for memorandum opinions.

¶14 We conclude that S.L. waived her objection to the alleged defects in the method of service when her counsel failed to allege these defects during the termination proceeding.

¶15 S.L. argues that the service of the petition for the termination of her parental rights by publication was defective and was in violation of her due process rights under the Fourteenth Amendment to the United States Constitution and Article II, Section 17 of the Montana Constitution. She argues that the District Court was in error when it concluded that service of notice of the hearing was accomplished in accordance with the Montana Rules of Civil Procedure and §§ 41-3-428 and 41-3-429, MCA.

5

¶16    Specifically, she claims that § 41-3-429(1) requires DPHHS to file an affidavit which states that, "after due diligence, the person cannot be identified or found and stating the diligent efforts made to identify, locate, and serve the person," and that in her case, the affidavits failed to allege diligent inquiry to locate her, and that the affidavits did not state sufficient facts to demonstrate that a diligent inquiry took place.  As a result of the defective affidavits, she argues, the termination proceedings should be voided.

¶17    DPHHS, while acknowledging that technical defects in the affidavits' language occurred, argues that S.L. waived the issue of proper service because she received constructive notice of the hearing through counsel, who appeared on her behalf and conducted cross-examination.  At the termination proceeding, counsel failed to allege any defect in the method of service.  DPHHS claims that S.L. had the opportunity to contest the adequacy of the affidavits when counsel appeared on her behalf, and that, had she done so, DPHHS could have remedied any defects.

¶18    S.L. replies that it is fundamentally unfair to apply the waiver rule in her case.  She points out that she did not retain counsel, but received appointed counsel, and that an appointed counsel is expected to attend a hearing whether or not that counsel has had contact with the client.  S.L. references Richmond's testimony that she had no way of personally serving S.L., and that S.L. was in jail for a portion of the time in which S.L. allegedly could not be located for personal service.

¶19    S.L. overlooks the fact that, when her counsel appeared at the hearing, counsel did not bring the alleged defects to the attention of the District Court.  Had counsel objected at the

6

hearing, DPHHS would have had the opportunity to remedy any defects promptly. However, she now seeks to invalidate the entire proceeding based on a procedural defect that was known at the time of the hearing.

¶20 We have previously held that we will enforce our contemporaneous objection rule, even in termination cases. We have stated,

> "The requirement that litigants object to asserted statutory violations in the district court serves purposes greater than simply preserving issues for appeal. A district court cannot correct statutory deficiencies if those concerns are not brought to its attention during the course of the proceeding, and for that reason, we have held that a district court will not be faulted for failing to address such issues. [Citation omitted.] To implement a contrary policy in child cases . . . would encourage litigants to withhold objections in the district court. . . . Numerous cases would be reversed on issues never considered by the district court. . . . [DPHHS] would be required to re-initiate protective proceedings for the involved children, and the prolonged litigation . . . would directly conflict with . . . the child's best interest, and the requirement that child cases be expedited, so that cases can be resolved, and children can be provided permanent, caring home environments as soon as possible." *In re T.E.*, 2002 MT 195, ¶ 23, 311 Mont. 148, ¶ 23, 54 P.3d 38, ¶ 23.

¶21 S.L. thus cannot, for the first time on appeal, void an entire proceeding on the basis of a defect in service of process which could have been remedied in a timely manner if it had been brought to the attention of the District Court. On the face of the briefs and the record on appeal, it is manifest that the appeal is without merit as the issues are clearly controlled by settled Montana law. Therefore, we affirm the judgment of the District Court.

/S/ PATRICIA O. COTTER

7

We Concur:

/S/ KARLA M. GRAY

/S/ W. WILLIAM LEAPHART

/S/ JAMES C. NELSON

/S/ JIM RICE