DA 17-0338

FILED

12/28/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA


IN THE SUPREME COURT OF THE STATE OF MONTANA

2017 MT 321N

IN THE MATTER OF:

H.N.O. and L.P.B.K.,

       Youths in Need of Care.

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause Nos. DN 15-080(A) and
DN 15-081(A)
Honorable Amy Eddy, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

              Kelly M. Driscoll, Montana Legal Justice, PLLC, Missoula, Montana

       For Appellee:

              Timothy C. Fox, Montana Attorney General, C. Mark Fowler, Assistant
Attorney General, Helena, Montana

              Ed Corrigan, Flathead County Attorney, Anne Y. Lawrence, Deputy
County Attorney, Kalispell, Montana

                    Submitted on Briefs:  November 29, 2017

                              Decided:  December 28, 2017

Filed:

                        _____
                                  Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 S.W.J.O. (Mother) appeals from orders of the Eleventh Judicial District Court, Flathead County, terminating her parental rights to her two children, L.P.B.K., age seven, and H.N.O., age four. We affirm.

¶3 H.O. (Father) is listed on both children's birth certificates and therefore their presumed father. In September 2015, the Department of Health and Human Services, Child Protective Services (the Department), determined Mother lacked "protective capacities and was allowing irresponsible people to supervise her children," removed the children from her care, and placed them with Father. The Department monitored the family, and a few months later determined the children were also not safe with Father. Accordingly, the Department filed a petition for Emergency Protective Services and Temporary Investigative Authority, which the District Court granted and subsequently continued. In due course, the District Court adjudicated the children as Youth in Need of Care and granted the Department Temporary Legal Custody. Initially, the Department could not locate Mother to personally serve her the petitions, but eventually served her in March 2016 at a local detention center where she was in custody for unrelated criminal charges. Mother was incarcerated multiple times between January and June 2016 for numerous

2

criminal charges, including forgery, theft, criminal possession of dangerous drugs and paraphernalia, criminal contempt, and obstruction of a peace officer.

¶4     The Department did not want to offer Mother a treatment plan; instead, it requested the District Court terminate Mother's parental rights without reunification services pursuant to § 41-3-609(1)(b), MCA, on the basis that mother had abandoned the children. Mother requested the Department provide reunification efforts, including a treatment plan, maintaining that she had not abandoned the children. The District Court concluded Mother had not abandoned the children and instructed the Department to arrange reunification services for Mother. Mother's treatment plan, which she signed and the District Court approved at the beginning of June 2016, required her to (1) complete a chemical dependency evaluation and follow its recommendations; (2) maintain sobriety, as monitored by random drug testing including drug patches and urinalyses; (3) undergo a psychological evaluation with Dr. Edward Trontel and follow its recommendations; and (4) participate in counseling to address mental health and parenting issues. Because Mother was incarcerated when the treatment plan was formulated, the plan required Mother complete each task within a certain number of weeks after her release.

¶5     Mother was released on June 7, 2016, but failed to comply with any portion of her treatment plan. Her release was quickly revoked and she remained in custody until July 22, 2016, when she pleaded guilty to two charges of possession of dangerous drugs and was released pending sentencing. Mother was homeless while she awaited her sentence because drug users lived at her proposed residence—she was afraid she would relapse if she lived there—and the local shelter was full. With nowhere to live, Mother struggled to

3

work on her treatment plan. She did, however, attend self-help meetings and wear a drug patch. Mother later described that, during that time, she was "basically just . . . waiting to go back to jail" because she "needed treatment" and "help." On September 7, 2016, Mother was incarcerated again.

¶6 In October, Flathead County District Court sentenced Mother for her two possession of dangerous drugs convictions and in November, Lake County District Court sentenced Mother because her deferred sentence for her forgery conviction was revoked. Combined, Mother received a net five-year sentence. Around the time Mother was sentenced, she started to comply with her treatment plan. Mother received a chemical dependency evaluation and the results indicated that Mother had a severe drug addiction. The evaluation concluded Mother's addiction required inpatient treatment, which she began in December. Mother also completed a mental health status exam with Dr. George Scheckleton, who diagnosed Mother with methamphetamine dependence and post-traumatic stress disorder.

¶7 In February 2017, the Department petitioned to terminate Mother's parental rights pursuant to § 41-3-609(1)(f), (2)(c), and (2)(d), MCA, on the grounds that Mother failed to successfully complete her treatment plan. The Department suggested the children be permanently placed with Father, who successfully worked with the Department towards reunification. The District Court held a termination hearing in May 2017, at which the Department presented evidence of Mother's failure to complete her treatment plan. The District Court ultimately terminated Mother's rights, concluding Mother did not complete

her treatment plan and that the circumstances rendering her unfit or unable to parent were unlikely to change within a reasonable time.

¶8 Mother appeals the termination of her parental rights, raising two issues. First, she contends the District Court erred when it concluded Mother failed to comply with an appropriate treatment plan. Mother urges us to exercise plain error review and, for the first time on appeal, analyze whether her treatment plan was appropriate. We sparingly invoke plain error review when fundamental rights are at issue and when "failing to review the claimed error may result in a manifest miscarriage of justice, may leave unsettled the question of the fundamental fairness of the trial or proceedings, or may compromise the integrity of the judicial process." *State v. Favel*, 2015 MT 336, ¶ 13, 381 Mont. 472, 362 P.3d 1126 (citing *State v. Taylor*, 2010 MT 94, ¶ 12, 356 Mont. 167, 231 P.3d 79); *accord State v. Baker*, 2000 MT 307, ¶ 13, 302 Mont. 408, 15 P.3d 379. We apply plain error review on a case-by-case basis, as it is discretionary, and only use it in exceptional cases. *Favel*, ¶ 13 (citing *State v. Reim*, 2014 MT 108, ¶ 29, 374 Mont. 487, 323 P.3d 880); *Baker*, ¶ 13.

¶9 A natural parent's right to the care and custody of her children "is a fundamental liberty interest which must be protected by fundamentally fair proceedings." *In re A.D.B.*, 2013 MT 167, ¶ 31, 370 Mont. 422, 305 P.3d 739. Therefore, the State may only terminate an individual's parental rights if certain conditions are satisfied by clear and convincing evidence. Section 41-3-609(1), MCA. While the right to parent is a strong fundamental right, children's best interests "are of paramount concern in a parental rights termination

5

proceeding and take precedence over the parental rights." *In re K.J.B.*, 2007 MT 216, ¶ 24, 339 Mont. 28, 168 P.3d 629 (citing § 41-3-609(3), MCA).

¶10   Because each abuse and neglect proceeding is unique, there is no bright-line definition of what constitutes an appropriate treatment plan. *In re A.C.*, 2001 MT 126, ¶ 26, 305 Mont. 404, 27 P.3d 960. A treatment plan "is intended to be a good faith, joint effort by both the [Department] and the parent to preserve the parent-child relationship and the family unit." *In re A.T.*, 2003 MT 154, ¶ 21, 316 Mont. 255, 70 P.3d 1247 (quoting *Matter of J.S.*, 269 Mont. 170, 178-79, 887 P.2d 719, 724 (1994) (Gray, C.J., specially concurring)). Thus, it is important that a parent's treatment plan is formulated with a specific parent in mind, especially when the parent is incarcerated or facing incarceration. *In re A.T.*, ¶ 23. It is also important that a parent is realistically able to successfully comply with the plan's conditions within the time allotted. *In re A.T.*, ¶ 23.

¶11   While Mother's fundamental right to parent is at issue here, we decline to exercise plain error review to reverse the District Court's termination of her parental rights because failing to review the appropriateness of the treatment plan will not result in a manifest miscarriage of justice, leave unsettled the question of the fundamental fairness of the proceeding, or compromise the integrity of the judicial process. The District Court denied the Department's initial request to terminate Mother's parental rights without providing reunification efforts and ordered a treatment plan. The Department made a good faith effort in formulating a treatment plan that required Mother undergo chemical dependency and psychological evaluations, maintain sobriety, and participate in counseling. The treatment plan recognized Mother's incarceration and required she complete the tasks within a certain

6

number of weeks only after she was released. Upon our review of the record, we decline to exercise plain error to reverse the District Court's decision.

¶12 Second, Mother argues the District Court erred when it concluded her conduct was unlikely to change within a reasonable time because she presented substantial evidence that her conduct had already changed. Mother also contends that the Department inappropriately presented evidence that terminating Mother's parental rights would avoid future domestic relation disputes between Mother and Father. We review a district court's decision to terminate parental rights for an abuse of discretion—whether the court "acted arbitrarily, without employment of conscientious judgment, or exceeded the bounds of reason resulting in substantial injustice." *In re K.J.B.*, ¶ 22. We review a district court's specific findings of fact for clear error and conclusions of law for correct interpretation. *In re K.J.B.*, ¶ 23. Section 41-3-609(1)(f), MCA, provides the parent-child relationship may be terminated if a child is adjudicated a youth in need of care and "(i) an appropriate treatment plan that has been approved by the court has not been complied with by the parents or has not been successful; and (ii) the conduct or condition of the parents rendering them unfit is unlikely to change within a reasonable time."

¶13 To determine "whether the conduct or condition of the parents is unlikely to change within a reasonable time" the court must find that continuing the parent-child relationship "will likely result in continued abuse or neglect or that the conduct or the condition of the parents renders the parents unfit, unable, or unwilling to give the child adequate parental care." Section 41-3-609(2), MCA. In making such determinations, the court considers factors such as "excessive use of intoxicating liquor or of a narcotic or dangerous drug that

7

affects the parent's ability to care and provide for the child" and whether there is "present judicially ordered long-term confinement of the parent." Section 41-3-609(2)(c) and (d), MCA. When considering those factors, the court must "give primary consideration to the physical, mental, and emotional conditions and needs of the child." Section 41-3-609(3), MCA.

¶14 We conclude the District Court did not abuse its discretion in terminating Mother's parental rights because we must prioritize the children's best interests and the record reflects clear and convincing evidence that Mother's condition rendering her unfit to parent is unlikely to change within a reasonable time. *See* § 41-3-609(1)(f)(ii) and (3), MCA. Though discussion of potential problems arranging parenting time between Mother and Father was inappropriate during the termination hearing, review of the record assures us that the District Court did not rely on such potential issues in terminating Mother's parental rights. While Mother eventually worked on components of her treatment plan while incarcerated, the Department presented sufficient evidence that Mother's condition rendering her an unfit parent is not likely to change within a reasonable time. The District Court discussed the treatment plan, term-by-term, with Mother at a hearing before it approved the plan, and Mother never objected to the plan or any of its terms. Mother was released in June for a short period of time, quickly rebooked, and then incarcerated until the end of July, when she was released until September. She made no efforts to comply with any part of her treatment plan during those periods of release, except wearing a drug patch that was provided to her upon her release from detention in July. Mother also did not ask to amend her treatment plan. It was not until the end of October, while incarcerated,

that Mother actively worked towards completing her treatment plan by undergoing various evaluations. However, Mother did not complete her treatment plan.

¶15 The District Court took judicial notice of Mother's criminal charges and sentences; Mother received a net-sentence of five years, which constitutes long-term confinement under § 41-3-609(2)(d), MCA. Furthermore, the results of her chemical dependency evaluation reflected a serious addiction to methamphetamine, demonstrating Mother used dangerous drugs which affected her ability to parent under § 41-3-609(2)(c), MCA. While Mother received inpatient treatment for her drug addiction, her five-year sentence does not permit her to be meaningfully involved in the children's lives for at least that amount of time. The record before us clearly demonstrates that Mother has a severe addiction for which she requires intense and extensive treatment. We acknowledge Mother's addiction played a paramount role in her inability to parent and recognize that, with proper treatment, Mother's condition will hopefully improve. Nevertheless, we must first consider what is best for the children and accordingly affirm the District Court's termination of Mother's parental rights.

¶16 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. This appeal presents no constitutional issues, no issues of first impression, and does not establish new precedent or modify existing precedent.

¶17 Affirmed.

/S/ LAURIE McKINNON

9

We Concur:

/S/ DIRK M. SANDEFUR
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ JIM RICE